# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
## COUNSELLORS AT LAW

CHARLES C. CARELLA
JAN ALAN BRODY
JOHN M. AGNELLO
CHARLES M. CARELLA
JAMES E. CECCHI

DONALD F. MICELI
CARL R. WOODWARD, III
MELISSA E. FLAX
DAVID G. GILFILLAN
G. GLENNON TROUBLEFIELD
BRIAN H. FENLON
LINDSEY H. TAYLOR
CAROLINE F. BARTLETT
ZACHARY S. BOWER+
DONALD A. ECKLUND
CHRISTOPHER H. WESTRICK*
STEPHEN R. DANEK
MICHAEL A. INNES
MEGAN A. NATALE

**5 BECKER FARM ROAD**
**ROSELAND, N.J.  07068-1739**
**PHONE (973) 994-1700**
**FAX (973) 994-1744**
**www.carellabyrne.com**

PETER G. STEWART
FRANCIS C. HAND
JAMES A. O'BRIEN, III
JOHN G. ESMERADO
STEVEN G. TYSON
MATTHEW J. CERES
MARC D. MORY

OF COUNSEL

*CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY
+MEMBER FL BAR ONLY
**MEMBER NY BAR ONLY
***MEMBER IL BAR ONLY

RAYMOND J. LILLIE
GREGORY G. MAROTTA
KEVIN G. COOPER
MARYSSA P. GEIST
JORDAN M. STEELE**
ZACHARY A. JACOBS***
WILLIAM H. WILLIAMS, X
MICHAEL K. BELOSTOCK
BRIAN F. O'TOOLE**
SEAN M. KILEY

June 17, 2022

**VIA ECF**

The Honorable Michael A. Shipp
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

Re:     *Strougo v. Mallinckrodt PLC, et al.*,
         Civil Action No.: 3:20-cv-10100 (MAS) (TJB)

Dear Judge Shipp:

We, along with Lead Counsel, represent lead plaintiff Canadian Elevator Industry Pension Trust Fund ("Plaintiff") in the above-captioned action and respectfully submit two points of clarification regarding Defendants' motion to dismiss (ECF No. 79), which, as of May 2, 2022, is now fully briefed.  "Defendants" refers to Mark C. Trudeau, Matthew K. Harbaugh, George A. Kegler, Bryan M. Reasons ("Reasons"), Kathleen A. Schaefer ("Schaefer"), Angus C. Russell, Melvin D. Booth, JoAnn A. Reed, Paul R. Carter, and Mark J. Casey ("Casey").  Mallinckrodt PLC ("Mallinckrodt") is no longer a defendant in this case due to its Chapter 11 bankruptcy plan (the "Plan") being approved by U.S. and Irish authorities as of April 27, 2022.  *See* Exhibit A (a true and correct copy of an excerpted version of Mallinckrodt's May 3, 2022 Form 8-K signed by defendant Reasons), at 1, 6.  On June 16, 2022, Mallinckrodt announced that the Chapter 11 bankruptcy plan has become effective and that Mallinckrodt is no longer in bankruptcy proceedings.  *See* Exhibit B (a true and correct copy of a press release issued by Mallinckrodt on June 16, 2022 entitled "*Mallinckrodt Emerges from Chapter 11 with Strengthened Balance Sheet and Enhanced Financial Flexibility*").

***First***, in their motion to dismiss briefs, Defendants argued that the factual findings made in the CMS Litigation[1] should not be credited because Judge Hogan's summary judgment decision was "on appeal."  ECF No. 79-1 at 8; ECF No. 95 at 10.  However, as Plaintiff explained in its'

---

[1]     "CMS Litigation" refers to *Mallinckrodt ARD LLC v. Verma*, 444 F. Supp. 3d 150 (D.D.C. 2020) (Hogan, J.).

The Honorable Michael A. Shipp
June 17, 2022
Page 2

opposition to Defendants' motion to dismiss on November 16, 2020, this has not been true since Mallinckrodt filed for Chapter 11 bankruptcy protection on October 12, 2020. *See* ECF No. 84 at 10 & n.4 (explaining that Mallinckrodt's bankruptcy filing included an agreement to: (i) settle the CMS Litigation for $260 million; (ii) have Mallinckrodt revert to using the 1990 base date AMP for Acthar; and (iii) withdraw Mallinckrodt's appeal of the CMS Litigation if the Chapter 11 bankruptcy plan is approved); ECF No. 84-2 at 6 ("upon execution of the settlement, the Company will dismiss its appeal of the CMS Medicaid rebate dispute, currently pending in the Court of Appeals for the D.C. Circuit").

Even worse, Defendants ignored that the CMS Litigation settled on March 7, 2022, before they filed their reply brief. *See* Ex. C.[2] As Defendants are well aware, this settlement means that Mallinckrodt's appeal of the summary judgment ruling in the CMS Litigation has effectively been withdrawn. *See* Ex. A at 2 ("In turn, Mallinckrodt will dismiss its appeal of the U.S. District Court for the District of Columbia's adverse decision in the Medicaid lawsuit, which was filed in the U.S. Court of Appeals for the District of Columbia Circuit."); Ex. C at ¶23 ("Within ten days after the Effective Date of this Agreement, Mallinckrodt will file a motion to hold in abeyance the appeal captioned *Mallinckrodt ARD LLC v. Verma*, No. 20- 5154, in the United States Court of Appeals for the District of Columbia Circuit (the 'DC Appeal'). Upon filing of the Joint Stipulation of Dismissal referenced in paragraph 22, Mallinckrodt will file a motion to dismiss the DC Appeal, pursuant to Federal Rule of Appellate Procedure 42(b), with each party to bear its own costs.").[3]

In other words, Defendants' primary argument for why this Court should not credit Judge Hogan's summary judgment findings in the CMS Litigation – that the decision is "on appeal" (ECF No. 95 at 10) – is moot. Thus, for the reasons explained by Plaintiff, the uncontested factual findings made by Judge Hogan in the CMS Litigation strongly support falsity and scienter for the misstatements and omissions challenged by Plaintiff. *See* ECF No. 84 at 2-3, 9-11, 20, 22-24 & n.14, 26-27, 31 n.16, 32, 35.[4]

---

[2]    Attached hereto as Exhibit C is a true and correct copy of the March 3, 2022 settlement agreement between the United States, Mallinckrodt, and whistleblower James Landolt ("Landolt"), which was signed on Mallinckrodt's behalf by defendant Casey. Landolt formerly reported directly to defendant Schaefer. ECF No. 56 at ¶49; ECF No. 84 at 30-31.

[3]    On May 20, 2022, Mallinckrodt stated in the CMS Litigation appeal that it "will file a motion voluntarily dismissing this appeal . . . after the effective date of the bankruptcy plan." Ex. D (a true and correct copy of the Joint Status Report, dated May 20, 2022, filed by Mallinckrodt in *Mallinckrodt ARD LLC v. Seema Verma, et al.*, No. 20-5154 (D.C. Cir.)), at 1. As demonstrated by Exhibit B, Mallinckrodt's Chapter 11 bankruptcy plan is now effective. *See* Ex. B at 1.

[4]    In addition, the CMS Litigation settlement resulted in Landolt receiving approximately $40 million in compensation for the information he provided to the U.S. Department of Justice about Defendants' willful avoidance of hundreds of millions of dollars of Acthar rebates. *See* Ex. E (a true and correct copy of a *Law360* article dated March 14, 2022, entitled "*How A Drug Co.'s Misreporting Earned A Whistleblower $40M*"), at 3. The substantial payment made to Landolt

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

The Honorable Michael A. Shipp
June 17, 2022
Page  3

      ***Second***, after incorrectly describing ¶262 in ECF No. 56 as a risk disclosure, and not squarely addressing this factual statement (ECF No. 79-1 at 36), Defendants belatedly – and improperly (ECF No. 84 at 15 n.8) – argue on reply that this factual statement is not adequately alleged to be false because: (i) "lower rebate expenses" purportedly means something different than "rebate"; and (ii) Mallinckrodt used the correct base date AMP for Acthar in 2017.  ECF No. 95 at 13.  Plaintiff respectfully submits that Defendants have waived the opportunity to raise these arguments; indeed, Defendants do not address Plaintiff's authority.  *See* ECF No. 84 at 15 n.8.

      Nonetheless, Plaintiff provides the following brief response to these improper arguments. Defendants cited nothing to support their contention that there is any meaningful distinction between "rebate expense" and "rebate," an argument that defies common sense.  ECF No. 95 at 13.  That is unsurprising because Mallinckrodt's 2017 Form 10-K (ECF No. 79-13) clearly states that "[w]hen we recognize net sales, we simultaneously record an adjustment to revenue for…rebates" and "[s]uch adjustments impact the amount of net sales we recognize in the period of adjustment."  *Id.* at 69.[5]  Thus, "rebate expense" is merely the amount of "rebate" for a given period.  As Plaintiff has plausibly alleged, ¶262 is actionable because the "lower rebate expenses" for Acthar sales in fiscal year 2017 were achieved through Defendants' knowingly improper use of the wrong base date AMP for Acthar, which artificially reduced such rebates by hundreds of millions of dollars.  ECF No. 84 at 15.

      Even less compelling is Defendants' argument that they used the correct base date AMP for Acthar in 2017, which fails for, among the many reasons detailed in Plaintiff's opposition to Defendants' motion to dismiss (*see* ECF No. 84), Mallinckrodt's admissions in settling the CMS Litigation "that there is only one Acthar, that FDA approved Acthar pursuant to a New Drug Application in 1952, and that Acthar was first produced, distributed, and marketed prior to 1990." Ex. C at Recital E.  Indeed, as a result of this settlement, "Mallinckrodt has reinstated in CMS's drug data reporting system (DDR) the Base Date AMP for Acthar as Acthar's AMP from the third quarter of 1990, and agrees that it will not change the Base Date AMP in the DDR."  *Id.*  These admissions remove any remaining doubts that Defendants fraudulently boosted Mallinckrodt's net sales for Acthar during the Class Period by knowingly underpaying rebates to CMS for Acthar.

      We appreciate the Court's continued attention to this matter and are available to answer any questions it may have.

---

nullifies Defendants' effort to undermine his credibility.  *Compare* ECF No. 79-1 at 21 *with* ECF No. 84 at 31.

[5]   Defendants are well aware of this page from the 2017 Form 10-K, as they affirmatively cite it in their motion to dismiss.  *See* ECF No. 79-1 at 25 n.14 (citing ECF No. 79-13 at 69).

The Honorable Michael A. Shipp
June 17, 2022
Page  4

Respectfully submitted,

*/s/ James E. Cecchi*

JAMES E. CECCHI

Enclosures

cc: All counsel of record (via ECF)

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION