# EXHIBIT A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

## FORM 8-K

---

**CURRENT REPORT**
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): April 27, 2022**

---

# Mallinckrodt plc
#### (Exact name of registrant as specified in its charter)

---

| **Ireland** | **001-35803** | **98-1088325** |
|:---:|:---:|:---:|
| **(State or other jurisdiction of incorporation)** | **(Commission File Number)** | **(IRS Employer Identification No.)** |

**College Business & Technology Park, Cruiserath, Blanchardstown, Dublin 15, Ireland**
**(Address of principal executive offices)**

**+353 1 6960000**
**(Registrant's telephone number, including area code)**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act: None

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

As previously disclosed, on October 12, 2020, Mallinckrodt plc, an Irish public limited company in examination under Part 10 of the Companies Act 2014 of Ireland ("**Mallinckrodt**"), and certain of its subsidiaries voluntarily initiated proceedings under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the U.S. Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"). Also as previously disclosed, on February 3, 2022, the Bankruptcy Court issued an opinion (which was subsequently revised on February 8, 2022 to make minor corrections) stating its intention to confirm Mallinckrodt's Fourth Amended Joint Plan of Reorganization of Mallinckrodt Plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code. Also as previously disclosed, on March 2, 2022, the Bankruptcy Court entered an order confirming the Fourth Amended Joint Plan of Reorganization (with Technical Modifications) of Mallinckrodt Plc and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code (as amended, supplemented or otherwise modified, the "**Plan**"). A copy of the Plan is attached hereto as Exhibit 2.1.

As previously disclosed, on February 14, 2022, the directors of Mallinckrodt initiated examinership proceedings before the High Court of Ireland (the "**Irish High Court**"), and on February 28, 2022, the Irish High Court made an order appointing Mr. Michael McAteer of Grant Thornton Ireland as examiner of Mallinckrodt (the "**Examiner**"). Subsequently, on April 27, 2022, the Irish High Court made an Order pursuant to Section 541(3) of the Companies Act of Ireland (the "**Order**") confirming a scheme of arrangement proposed by the Examiner between Mallinckrodt, its creditors and members, which is based on and consistent in all respects with the Plan (the "**Scheme**"). A copy of the Scheme is attached hereto as Exhibit 2.2. On April, 27, 2022, the Irish High Court also made an order pursuant to Section 542(3) of the Companies Act of Ireland that the Scheme shall become effective on the same date that the Plan becomes effective. At such time, the Scheme will become binding on Mallinckrodt, its creditors and members as a matter of the laws of Ireland, the examinership proceedings will conclude, and Mallinckrodt will cease to be under the protection of the Irish High Court. A copy of the Order, which was perfected on April 28, 2022, is attached hereto as Exhibit 99.1.

*Summary of the Scheme of Arrangement*

The following is a summary of the material features of the Scheme as confirmed by the Irish High Court. This summary highlights only certain provisions of the Scheme and is not intended to be a complete description of the Scheme. This summary is qualified in its entirety by reference to the full text of the Plan, the Scheme, and the Order (which includes the Plan and Scheme as schedules), copies of which are attached hereto as Exhibits 2.1, 2.2, and 99.1, respectively, and are incorporated herein by reference. Capitalized terms used but not defined herein have the meanings ascribed to them in the Scheme.

The Scheme implements certain aspects of the Plan insofar as it relates to Mallinckrodt only, and provides for the following (amongst other things):

- Resolution of Opioid-Related Claims Against Mallinckrodt. Pursuant to the Scheme, on the effective date thereof (the "**Effective Date**") all opioid claims against Mallinckrodt are deemed to have been settled, discharged, waived, released and extinguished in full against Mallinckrodt, and Mallinckrodt ceases to have any liability or obligation with respect to such claims, which are then treated in accordance with the Plan as follows:

  - Opioid claims will be channeled to one or more trusts, which will receive $1,725.0 million in structured payments consisting of (i) a $450.0 million payment upon effectiveness of the Plan; (ii) a $200.0 million payment upon each of the first and second anniversaries thereof; (iii) a $150.0 million payment upon each of the third through seventh anniversaries thereof; and (iv) a $125.0 million payment upon the eighth anniversary thereof, with an eighteen-month prepayment option at a discount for all but the first payment.

  - Opioid claimants will also receive, in addition to other potential consideration, warrants for approximately 19.99% of reorganized Mallinckrodt's new outstanding shares, after giving effect to the exercise of the warrants, but subject to dilution from equity reserved under Mallinckrodt's management incentive plan, exercisable at any time on or prior to the sixth anniversary of the effectiveness of the Plan, at a strike price reflecting an aggregate equity value for the reorganized Debtors of $1,551.0 million.

1

Following effectiveness of the Plan, certain Mallinckrodt subsidiaries will remain subject to an agreed-upon operating injunction with respect to the operation of their opioid business.

- <u>Resolution of Disputes with the U.S. Department of Justice and Other Governmental Parties Relating to Acthar Gel</u>. Pursuant to the Scheme, on the Effective Date all claims of U.S. Department of Justice and other governmental parties relating to Acthar Gel against Mallinckrodt are deemed to have been settled, discharged, waived, released and extinguished in full against Mallinckrodt, and Mallinckrodt ceases to have any liability or obligation with respect to such claims, which are then treated in accordance with the Plan and the terms of the settlement that is summarized below:

    - Mallinckrodt has reached an agreement with the U.S. Department of Justice ("**DOJ**") and other governmental parties to settle a range of litigation matters and disputes relating to Acthar Gel (the "**Governmental Acthar Settlement**") including a Medicaid lawsuit with the Centers for Medicare and Medicaid Services, a related False Claims Act ("**FCA**") lawsuit in Boston, and an Eastern District of Pennsylvania ("**EDPA**") FCA lawsuit principally relating to interactions of Acthar Gel's previous owner (Questcor Pharmaceuticals Inc.) with an independent charitable foundation. Under the Governmental Acthar Settlement, which was conditioned upon Mallinckrodt commencing its chapter 11 proceeding and provides the distributions the applicable claimants will receive under the Plan, Mallinckrodt has agreed to pay $260.0 million to the DOJ and other parties over seven years and reset Acthar Gel's Medicaid rebate calculation as of July 1, 2020, such that state Medicaid programs will receive 100% rebates on Acthar Gel Medicaid sales, based on current Acthar Gel pricing. Also in connection with the Governmental Acthar Settlement, Mallinckrodt entered into a five-year corporate integrity agreement with the Office of Inspector General of the U.S. Department of Health and Human Services in March 2022. As a result of these agreements, upon effectiveness of the Governmental Acthar Settlement in connection with the effectiveness of the Plan, the U.S. Government will drop its demand for approximately $640 million in retrospective Medicaid rebates for Acthar Gel and agree to dismiss the FCA lawsuit in Boston and the EDPA FCA lawsuit. Similarly, state and territory Attorneys General will also drop related lawsuits. In turn, Mallinckrodt will dismiss its appeal of the U.S. District Court for the District of Columbia's adverse decision in the Medicaid lawsuit, which was filed in the U.S. Court of Appeals for the District of Columbia Circuit.

    - Mallinckrodt has entered into the Governmental Acthar Settlement with the DOJ and other governmental parties solely to move past these litigation matters and disputes and does not make any admission of liability or wrongdoing.

- <u>Modification of Mallinckrodt's Senior Secured Term Loans</u>. Upon effectiveness of the Scheme and the Plan, lenders holding allowed claims in respect of Mallinckrodt's senior secured term loans due September 2024 (the "**2024 Term Loans**") and its senior secured term loans due February 2025 (the "**2025 Term Loans**") will receive either (1) their pro rata share of new senior secured term loans in an amount equal to the then-remaining principal amount of such claims bearing interest at a rate per annum equal to LIBOR plus 5.25% (with respect to the 2024 Term Loan) or LIBOR plus 5.50% (with respect to the 2025 Term Loan), maturing on the earlier of September 30, 2027 and 5.75 years after effectiveness of the Scheme and the Plan and without any financial maintenance covenant, and payment in cash of an exit fee equal to 1.00% of such remaining principal amount or (2) payment in full of such remaining principal amount in cash and payment in cash of an exit fee equal to 0.50% of such remaining principal amount.

- <u>Repayment of the Mallinckrodt's Senior Secured Revolving Credit Facility</u>. Upon effectiveness of the Scheme and the Plan, all allowed claims under Mallinckrodt's senior secured revolving credit facility will be paid in full in cash, principally with the proceeds of newly incurred debt.

- <u>Reinstatement of Mallinckrodt's 10.00% First Lien Senior Secured Notes Due 2025</u>. Upon effectiveness of the Scheme and the Plan, Mallinckrodt's first lien senior secured notes due 2025 will be reinstated at existing rates and maturities as the applicable holders' purported make-whole claims were disallowed.

- <u>Modification of Mallinckrodt's 10.00% Second Lien Senior Secured Notes Due 2025</u>. Upon effectiveness of the Scheme and the Plan, lenders holding allowed claims in respect of Mallinckrodt's 10.00% second lien senior secured notes due 2025 will receive their pro rata share of new 10.00% second lien senior secured notes due 2025 that will have the same principal amount and other economic terms as the existing second lien senior secured notes.

2

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

MALLINCKRODT PLC
(registrant)

By: /s/ Bryan M. Reasons

Bryan M. Reasons
Executive Vice President & Chief Financial Officer
*(principal financial and accounting officer)*

Date: May 3, 2022

6