# CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
### COUNSELLORS AT LAW

———

| | | | | |
|---|---|---|---|---|
| CHARLES C. CARELLA | DONALD F. MICELI | **5 BECKER FARM ROAD** | PETER G. STEWART | RAYMOND J. LILLIE |
| JAN ALAN BRODY | CARL R. WOODWARD, III | **ROSELAND, N.J.  07068-1739** | FRANCIS C. HAND | GREGORY G. MAROTTA |
| JOHN M. AGNELLO | MELISSA E. FLAX | **PHONE (973) 994-1700** | JAMES A. O'BRIEN, III | MARYSSA P. GEIST |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | **FAX (973) 994-1744** | JOHN G. ESMERADO | JORDAN M. STEELE** |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | **www.carellabyrne.com** | STEVEN G. TYSON | BRIAN F. O'TOOLE |
| | BRIAN H. FENLON | | MATTHEW J. CERES | SEAN M. KILEY |
| | CAROLINE F. BARTLETT | | ZACHARY A. JACOBS*** | ROBERT J. VASQUEZ |
| | ZACHARY S. BOWER+ | | JASON H. ALPERSTEIN+ + | BRITTNEY M. MASTRANGELO |
| | DONALD A. ECKLUND | | | |
| | CHRISTOPHER H. WESTRICK* | | OF COUNSEL | |
| | STEPHEN R. DANEK | | | |
| | MICHAEL A. INNES | | *CERTIFIED BY THE SUPREME COURT OF | |
| | MEGAN A. NATALE | | NEW JERSEY AS A CIVIL TRIAL ATTORNEY | |
| | KEVIN G. COOPER | | **MEMBER NY BAR | |
| | | | ***MEMBER IL BAR | |
| | | | +MEMBER FL BAR | |
| | | | + + MEMBER NY & FL BAR | |

February 21, 2024

**By ECF**

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:    *Strougo v. Mallinckrodt PLC, et al.*,
>        Civil Action No.: 3:20-10100 (RK) (TJB) (D.N.J.)

Dear Magistrate Judge Bongiovanni:

    We, along with Lead Counsel Robbins Geller Rudman & Dowd LLP, represent Lead Plaintiff Canadian Elevator Industry Pension Trust Fund ("CEIPTF") and Named Plaintiff City of Sunrise Police Officers' Retirement Plan ("COSPORP," and with CEIPTF, "Plaintiffs") in the above-referenced action.  Three disputes have arisen in this case that the parties and non-party Mallinckrodt plc ("Mallinckrodt"),[1] despite having met and conferred in good faith numerous times, have been unable to resolve.  The parties and Mallinckrodt respectfully request that the Court consider this letter briefing in advance of the status conference set for February 27, 2024, to resolve the following outstanding issues: (1) Plaintiffs' intention to file a motion to compel regarding one request in the subpoena Plaintiffs served on Mallinckrodt on December 15, 2023 (the "Mallinckrodt Subpoena"); (2) Plaintiffs' request for an additional 25 merits depositions beyond the 10 deposition limit set forth in Fed. R. Civ. P. ("Rule") 30(a)(2)(A)(i); and (3) Defendants'[2] request for a sur-reply to Plaintiffs' reply brief in support of class certification that is due on April 5, 2024.

---

[1]    Mallinckrodt is no longer a defendant due to its discharge by virtue of its Chapter 11 bankruptcy proceedings. *See* ECF No. 104.  Mallinckrodt and Defendants (defined below) are represented by the same counsel in this action.

[2]    "Defendants" refers to Mark C. Trudeau, Matthew K. Harbaugh, George A. Kegler, Bryan M. Reasons, Kathleen A. Schaefer, Angus C. Russell, Melvin D. Booth, JoAnn A. Reed, Paul R. Carter, and Mark J. Casey.

February 21, 2024
Page 2

**Plaintiffs' Position**

The Mallinckrodt Subpoena

On January 2, 2024, Mallinckrodt refused to provide documents in response to request number one in the Mallinckrodt Subpoena,[3] which seeks documents concerning two separate components of the Chapter 11 bankruptcy plan (the "Plan") (the third-party release contained in Article IX.C of the Plan (the "Release") and the injunction contained in Article IX.G of the Plan (the "Injunction")) approved by Judge Dorsey in *In re Mallinckrodt plc*, No. 1:20-12522, Dkt. 6660 (Bankr. D. Del.) (the "Chapter 11 Case") in the confirmation order (the "Confirmation Order").

After several subsequent meet and confers, Plaintiffs understand Mallinckrodt's sole opposition to providing this discovery to be that this request supposedly "seeks untimely class certification discovery. The deadline for the completion of class certification discovery was August 9, 2023. ECF No. 116." Ex. A at 7. This position should be rejected for two reasons.

*First*, Plaintiffs are seeking this discovery because Defendants' primary class certification challenge is that the Release and the Injunction collectively prohibit the majority of Mallinckrodt investors who purchased their securities during the May 3, 2016 to March 13, 2020 class period ("Class Period") – including COSPORP[4] – from being class members or from litigating against Defendants since the Plan confirmed in the Chapter 11 Case went effective in April 2022. Notably, although the Confirmation Order upon which Defendants make their arguments was entered on March 2, 2022 – ***before*** the motion to dismiss in this action was issued by Judge Shipp, Defendants first asserted this argument on October 10, 2023 – over two months ***after*** the class certification discovery deadline passed, and nearly 1.5 years ***after*** the Confirmation Order was entered.

Plaintiffs strongly disagree that the Release and the Injunction have this effect, as will be detailed in their forthcoming class certification reply brief. During the January 23, 2024 meet and confer between the parties, Mallinckrodt's counsel acknowledged that this argument is "unprecedented" because no Section 10(b) individual defendants seem to have ever asserted it. Thus, until receiving Defendants' opposition brief, Plaintiffs had no insight into the basis of the challenge Defendants have made regarding the Release and the Injunction in the context of class certification, and therefore had no reason to request discovery on these topics.

Discovery regarding the Release and the Injunction is necessary because Plaintiffs intend to seek appropriate relief from Judge Dorsey regarding the scope of the Release and Injunction

---

[3] Attached hereto as Exhibit A is a true and correct copy of Mallinckrodt's Responses and Objections to the Mallinckrodt Subpoena, dated January 2, 2024.

[4] Notably, even though Defendants now contend that COSPORP is violating the Plan and the Injunction by participating in this action, during the parties' July 18, 2023 status conference before Your Honor, when Defendants were opposing COSPORP's permissive intervention motion under Rule 24(b), Defendants did not argue that the Release or the Injunction barred COSPORP from participating as a plaintiff or as a class member. ECF No. 122.

February 21, 2024
Page 3

since the confirmed Plan and Confirmation Order provides that Judge Dorsey "retain[ed] exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . ." (Confirmation Order ¶320) in the form of an order clarifying that the Release and the Injunction do not operate as Defendants contend.  Plaintiffs intend to seek this relief in advance of the April 5, 2024 deadline to file their reply brief in support of class certification. Plaintiffs need the requested discovery (and a related deposition from Mallinckrodt and/or its bankruptcy counsel) to obtain more information on the scope of the Release and the Injunction and Mallinckrodt's statements during the Chapter 11 Case, which are contrary to Defendants' current argument.

For example, Stephen Welch testified on behalf of Mallinckrodt during the confirmation hearing that "[t]he debtors' release *expressly excludes* any *claims* of actual fraud, gross negligence, or willful misconduct." Ex. B at 129:7-9 (emphasis added).[5] Likewise, Mallinckrodt's bankruptcy counsel from Latham & Watkins LLP stated during the confirmation hearing that "[t]he third-party release . . . also *notably exclud[es] claims* for actual fraud, gross negligence and willful misconduct." Ex. C at 45:20-46:4 (emphasis added).[6]  Indeed, Judge Dorsey adopted this exact phrasing in describing the Release in his Opinion confirming Mallinckrodt's Chapter 11 Plan, finding that "[t]he Third-Party Releases also *specifically exclude* certain types of *claims*, including *any cause of action* that is determined to constitute actual fraud, gross negligence or intentional misconduct." Ex. D at 45 (emphasis added).[7]  This testimony and these statements established that there is discoverable information within Mallinckrodt regarding the Release and the Injunction, including documents indicating that the Release and the Injunction were not intended to operate in the manner now apparently asserted by Defendants.  Thus, the requested discovery is plainly relevant to Defendants' argument and should be produced.

*Second*, Defendants' argument that the requested discovery is untimely because the class certification discovery deadline expired in August 2023 is wrong as a matter of fact and law.  Indeed, in pursuing class certification discovery, Defendants never mentioned the Injunction at all, and only raised the Release at the deposition of Plaintiffs' financial expert, Dr. Steven P. Feinstein, Ph.D., CFA ("Feinstein") in questioning his proposed damages model – *and in no other context*:

(i) Defendants' document requests to CEIPTF on February 16, 2023 *do not mention Mallinckrodt's bankruptcy at all, let alone the Plan, the Release or the Injunction*;[8]

---

[5]    Attached hereto as Exhibit B is a true and correct excerpted copy of the testimony of Stephen Welch during the Chapter 11 Case on December 6, 2021.  Stephen Welch was Mallinckrodt's Chief Transformation Officer in connection with the Chapter 11 Case.

[6]    Attached hereto as Exhibit C is a true and correct excerpted copy of the testimony of Christopher Harris, Esq., of Latham & Watkins LLP in the Chapter 11 Case on January 3, 2022.

[7]    Attached hereto as Exhibit D is a true and correct copy of the Opinion issued by Judge Dorsey in the Chapter 11 Case on February 3, 2022.

[8]    Attached hereto as Exhibit E is a true and correct copy of Defendants' First Request for Production of Documents to Plaintiff, dated February 16, 2023.  Defendants chose not to serve document requests on COSPORP, and instead requested that the CEIPTF document requests apply equally to COSPORP.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page 4

(ii) Defendants' interrogatories to CEIPTF on February 16, 2023 *likewise do not mention Mallinckrodt's bankruptcy at all, let alone the Plan, the Release or the Injunction*;[9]

(iii) Plaintiffs' objections and responses served to Defendants' Rule 30(b)(6) subpoena notices only agreed to provide testimony regarding Mallinckrodt's bankruptcy to a limited extent, *i.e.*, "about the fact that Plaintiff submitted a proof of claim in the Bankruptcy Action and objected to the Bankruptcy Plan," *and neither notice specifically referenced the Release or the Injunction, nor did Defendants challenge Plaintiffs' limitation of these deposition topics* (Ex. G at 12, Ex. H at 10);[10] and

(iv) *Defendants never showed the Plan, the Release, or the Injunction to either of the CEIPTF or COSPORP Rule 30(b)(6) deponents.*  Ex. I at 4 (listing the exhibits shown at the CEIPTF deposition, none of which are the Plan that contain the Release and the Injunction), Ex. J at 3 (same for COSPORP).[11]

Defendants did show the Plan to Dr. Feinstein during his deposition and pointed him to the Release language.  Counsel's questioning, however, was solely focused on whether Dr. Feinstein's proposed damages model included any adjustments for Class Members whose claims have been potentially released.  Ex. K at 119:18-122:10.[12]  Dr. Feinstein unequivocally testified that the release language was irrelevant because his damages model applies to all claims.  *Id.* Unsurprisingly, Defendants did not raise the Release or the Injunction in discussing Dr. Feinstein's damages model in their class certification opposition brief.  Furthermore, in deposing COSPORP *after* Dr. Feinstein's testimony, Defendants also did not raise the Plan, the Release, or the Injunction, nor did they indicate *in any way* that COSPORP was, in their view, violating the Injunction and the Plan by participating in this action.  *See* Ex. J at 81:24-83:12.  To the contrary, Defendants' deposition of COSPORP and their decision not to seek enforcement of the Injunction with Judge Dorsey (where the Injunction, if violated, must be enforced) – which Defendants have not done to this day – demonstrates that Defendants never truly believed that the Injunction or the Release apply to this action, let alone that Plaintiffs were on notice of their class certification argument.

---

[9]    Attached hereto as Exhibit F is a true and correct copy of Defendants' First Set of Interrogatories to Plaintiff, dated February 16, 2023.  Defendants chose not to serve interrogatories on COSPORP.

[10]    Attached hereto as Exhibits G and H are true and correct copies of CEIPTF's Responses and Objections to Defendants' Notice of Deposition Pursuant to Rule 30(b)(6), dated July 17, 2023, and COSPORP's Responses and Objections to Defendants' Notice of Deposition Pursuant to Rule 30(b)(6), dated August 15, 2023.

[11]    Attached hereto as Exhibits I and J are true and correct excerpted copies of the Deposition of Gregory Manion (CEIPTF), dated July 18, 2023, and the Deposition of David Williams (COSPORP), dated August 17, 2023.

[12]    Attached hereto as Exhibit K is a true and correct excerpted copy of the Deposition of Dr. Feinstein, dated July 27, 2023.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page  5

In other words, Defendants' incorrect view of the combined effect of the Release and the Injunction in this action was not interjected into this action until they filed their brief opposing class certification – *two months after class certification discovery concluded and more than 1.5 years after the relevant order was entered by Judge Dorsey*.  Indeed, Defendants' counsel invented this argument because they recognize there is no legitimate basis upon which to oppose class certification.  Defendants' choice to manufacture a class certification challenge based on the Plan in October 2023 is not a license to deny Plaintiffs the opportunity to ensure that Judge Dorsey can fully and fairly address their argument.

Finally, even if Defendants' argument concerning the Release and the Injunction had been properly and timely raised in class certification discovery in this action – and it was not – as recently recognized by Judge Quraishi in a securities fraud class action where your Honor is also presiding, Rule 23(c)(1)(C) requires that "new evidence relevant to class certification can – and should be – considered at any time before final judgment." *Hall v. Johnson & Johnson*, 2023 WL 9017023, at *7 (D.N.J. Dec. 29, 2023) (collecting cases).  As in *Hall*, Defendants will suffer no prejudice if the requested discovery is produced because they will have ample opportunity to address it when they oppose Plaintiffs' motion regarding the Release and the Injunction before Judge Dorsey.  Plaintiffs are the only party who will be prejudiced if this discovery is not produced.

Accordingly, Plaintiffs respectfully submit that the requested discovery in the Mallinckrodt Subpoena be produced by no later than March 12, 2024, so that Plaintiffs can utilize this information in their application to Judge Dorsey regarding the Release and the Injunction.

The Fact Deposition Limit

The parties have been unable to reach an agreement on the number of fact witness depositions beyond the presumptive ten deposition limit.  For the reasons stated below, Plaintiffs respectfully request that the Court order an additional 15 depositions beyond the 20 depositions that Defendants have agreed to provide in this action, and allow Plaintiffs to take up to a total of 35 fact witness depositions.

This putative securities fraud class action focuses on three distinct sets of allegedly false and misleading statements and omissions made over several years by ten individual Defendants during the May 3, 2016 to March 13, 2020 Class Period regarding: (i) Medicaid rebates that Defendants illegally avoided for Acthar, Mallinckrodt's most important drug during the Class Period; (ii) the fiscal year 2019 financial guidance Defendants issued for Acthar; and (iii) the status of a False Claims Act lawsuit regarding Acthar's marketing.  *See Strougo v. Mallinckrodt plc*, 2022 WL 17740482, at *1-*5 (D.N.J. Dec. 16, 2022).  The relevant period for this action dates to 2010, when Questcor Pharmaceuticals, Inc. ("Questcor") – which Mallinckrodt purchased in 2014 – began the illegal Acthar rebate avoidance scheme.  *Id.*  Indeed, Judge Shipp cited Mallinckrodt's

February 21, 2024
Page  6

2014 due diligence in acquiring Questcor, and Questcor's 2010 to 2013 communications with CMS[13] regarding Acthar, as supportive of Defendants' scienter.  *Id.* at *7-*8.

The illegal Acthar rebate avoidance scheme ultimately exposed Mallinckrodt to $600 million in liability, was a main contributor to Mallinckrodt's decision to file the Bankruptcy Litigation, and resulted in a $260 million settlement with CMS in the Bankruptcy Litigation and a $40 million settlement in a related SEC investigation in November 2023.[14]  *Id.* at *4. Unsurprisingly, an issue of this magnitude implicates scores of individuals at Mallinckrodt (and numerous different departments within Mallinckrodt, including, *e.g.*, accounting, government pricing, internal audit, finance, and investor relations), Questcor, and numerous third parties, many of whom were not in the same role over the course of the 2010 to 2020 time period.

Indeed, the parties' initial disclosures identified 112 relevant individuals and entities (from Plaintiffs)[15] and 39 relevant individuals and entities (from Defendants),[16] with only partial crossover between them.  At the outset of fact discovery in January 2023, Plaintiffs recognized that the ten deposition limit would not suffice since that would only cover the depositions of Defendants.  Nonetheless, Plaintiffs agreed to table the issue until they received and reviewed the majority of Defendants' documents.  Defendants' substantial completion deadline was December 12, 2023.  By then, Defendants produced over 149,000 documents on behalf of at least 77 individual custodians, and dozens of group custodians that comprise undefined individuals.

Plaintiffs have made every effort to be judicious with their request for additional depositions.  Before revisiting the issue of the number of depositions, Plaintiffs reviewed each document Defendants produced.  Plaintiffs also reviewed documents produced in response to third-party document subpoenas to 19 individuals and entities (approximately 16,000 documents).  At the conclusion of the review of all document productions made to-date, Plaintiffs believed that 50 to 60 fact witness depositions were appropriate for this action.

Nonetheless, in an effort to streamline discovery, Plaintiffs served a Rule 30(b)(6) deposition notice on Mallinckrodt on December 15, 2023 in the hope that a number of fact depositions could be reduced through Rule 30(b)(6) testimony.  During the parties' December 21, 2023 meet and confer, while Mallinckrodt's response to the Rule 30(b)(6) notice was still pending, Defendants consented to 20 depositions.  Plaintiffs responded that they could not negotiate the number of depositions until Mallinckrodt provided its position on the Rule 30(b)(6) subpoena.

---

[13]   "CMS" refers to The Centers for Medicare and Medicaid Services, which is the governmental entity who oversees rebates for drugs like Acthar.

[14]   *See* https://www.sec.gov/files/litigation/admin/2023/33-11256.pdf (last accessed February 20, 2024)

[15]   Attached hereto as Exhibit L is a true and correct copy of Plaintiffs' Amended Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), dated July 25, 2023.

[16]   Attached hereto as Exhibit M is a true and correct copy of Defendants' Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), dated February 9, 2023.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page  7

On January 19, 2024, Mallinckrodt served its responses and objections to the Rule 30(b)(6) subpoena, principally asserting that "[i]t is Mallinckrodt's position that Plaintiffs should first depose up to 20 individual party and non-party witnesses (twice the presumptive limit provide for Rule 30(a)(1) of the Federal Rules of Civil Procedure) and, if Plaintiffs believe they require additional information after completing those depositions, the parties should at that time meet-and-confer as to the need for additional individual depositions and/or the scope of a Mallinckrodt Rule 30(b)(6) deposition." Ex. M at 2.[17]  In other words, Defendants' position remained unchanged.

In a further effort to reach compromise and avoid burdening the Court, during the parties' January 23, 2024 meet and confer, Plaintiffs stated that they believed 35 fact witness depositions could work if the final deposition was reserved for a Mallinckrodt Rule 30(b)(6) deposition to cover any issues that were not adequately addressed by the prior depositions.  Defendants confirmed on January 26, 2024, and again on February 5, 2024, that their position – 20 depositions and the meet and confer process described in the Rule 30(b)(6) response – remained unchanged.[18]

Plaintiffs respectfully submit that their proposal for 35 fact witness depositions are reasonable and narrowly tailored given the expansive time frame and the large number of individuals and entities pertinent to Plaintiffs' claims.  Indeed, in *Hall* there were only four individual defendants and this Court permitted at least 34 fact witness depositions in addition to a 30(b)(6) deposition.[19]  Likewise, in *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No. 3:15-cv-7658 (MAS) (D.N.J.), a securities fraud class action with 17 individual defendants, Judge Shipp permitted 70 fact witness depositions and 40 third party depositions (or approximately four depositions per individual defendant).[20]  The same result is warranted here.[21]

---

[17]   Attached hereto as Exhibit N is a true and correct copy of Mallinckrodt PLC's Responses and Objections to Plaintiffs' Subpoena to Testify at a Deposition in a Civil Action, dated January 19, 2024.

[18]   Defendants have suggested that because the SEC took 16 interviews in its investigation that their offer of 20 depositions is reasonable.  Not true.  The SEC focused its investigation on the post-November 2018 time frame, did not interview James Landolt, Kay Forshee, or any former Questcor employee, all of whom were critical to Judge Shipp's findings in this case (*see Strougo*, 2022 WL 17740482, at *4 & n4 (referencing Landolt 8 times), *id.* at *3-*4 (referencing Forshee 5 times), and *id.* at *7-*8 (discussing the significance of Questcor generally and the due diligence Mallinckrodt took when purchasing *Questcor* specifically)), and only challenged Mallinckrodt's 2019 SEC filings.

[19]   Attached hereto as Exhibit O is a true and correct copy of the relevant deposition limit order from *Hall*.

[20]   Attached hereto as Exhibit P is a true and correct copy of the relevant deposition limit order from *Valeant*.

[21]   Defendants have also suggested that Plaintiffs are obligated to provide them with a list of deponents in advance of agreeing on the number of depositions.  Nothing in the Federal Rules or the Local Rules require the disclosure of this information, which is Plaintiffs' counsel's work product.  Indeed, complying with this request would unfairly prejudice Plaintiffs because, among other things, the parties are negotiating additional document productions on behalf of numerous custodians and are engaged in several disputes regarding the thousands of documents Defendants and Mallinckrodt have placed on privilege logs.  The additional documents that will be forthcoming from these disputes could change Plaintiffs' list, and Plaintiffs are entitled to make those determinations without oversight from Defendants' counsel, who has an obvious interest in obstructing such efforts.  If it would be helpful in advance of the

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page 8

Defendants' Request for a Sur-Reply

During the parties' January 12, 2024 meet and confer, Plaintiffs requested Defendants' position on a page limit extension for Plaintiffs' class certification reply brief in light of the novel bankruptcy issues Defendants are raising, as described above. On January 23, 2024, Defendants agreed not to oppose Plaintiffs' request. Defendants made no mention during the January 12 meet and confer or the January 23 meet and confer of any request for a sur-reply. On January 26, 2024, Plaintiffs requested the agreed upon page limit extension (ECF No. 130), which the Court ordered on February 6, 2024. ECF No. 131.

Several hours after Plaintiffs filed their request for the page limit extension, on January 26, 2024, Defendants demanded by letter that Plaintiffs agree *now* – months *before* Plaintiffs' reply brief is due – to allow Defendants to file a sur-reply. In other words, the timeline suggested in Defendants' portion of this letter – that the request for a sur-reply was made during the January 12 meet and confer – misstates the record of when their sur-reply request was first interposed. Defendants' insinuation that Plaintiffs' page limit extension request was tied to their sur-reply request is incorrect and should be disregarded.

During the parties' meet and confer on February 5, 2024, defense counsel could not articulate a basis for the sur-reply other than to speculate that Plaintiffs may make arguments with which they think they will disagree. Defendants' portion of this letter on this issue confirms as much. But speculation and conjecture are not legitimate grounds for a sur-reply, as courts routinely recognize. *See, e.g.*, *In re Qualcomm Inc. Sec. Litig.*, 2022 WL 2841833, at *1 (S.D. Cal. July 1, 2022) (finding that because "Lead Plaintiffs have yet to file a reply brief . . . therefore the proposed sur-reply is premature. Defendants may renew their request for a sur-reply after the parties have submitted the scheduled briefing on class certification."). And Defendants ignore that the very arguments they are concerned about will be at issue before Judge Dorsey, meaning they will have a full opportunity in that forum to raise their concerns. Plaintiffs will entertain a sur-reply request from Defendants after their class certification reply brief is filed, but will not agree to one now.

**Defendants' Position**

I.        Plaintiffs' Request to Re-Open Class Certification Discovery

Plaintiffs' request to re-open class certification discovery months after it closed should be denied. By way of background, on March 21, 2023, this Court entered the parties' agreed-upon scheduling order that required all class certification-related discovery be completed no later than August 9, 2023. The parties proceeded to serve and respond to document requests and interrogatories concerning class certification, and to take deposition testimony from the two proposed class representatives and the parties' experts who opined on class certification issues.

---

February 27, 2024 status conference, Plaintiffs are willing to make an *in camera* submission to the Court regarding the 50 or so individuals Plaintiffs have identified as being deposition candidates for the requested 35 depositions.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page 9

After that discovery was completed, Plaintiffs served their motion for class certification on Defendants on August 10, 2023.[22] There, Plaintiffs asked the Court to certify a class comprised of all purchasers of Mallinckrodt common stock between May 3, 2016 and March 13, 2020 (the "Proposed All Purchasers Class").

Plaintiffs' moving brief briefly mentioned Plaintiffs' representation of proposed class representative CEIPTF in Mallinckrodt's bankruptcy case, but did not address or in any way the fact that CEIPTF actively litigated and lost the question of whether the Release and Injunction in the Plan applied to Mallinckrodt stockholders who had not timely and properly opted out pursuant to approved Bankruptcy Court procedures.

Defendants argued in their opposition brief that the Court could not certify the Proposed All Purchasers Class because the Release and Injunction in the Plan by its terms barred any stockholder who had not properly opted out from litigating pre-petition claims against the Defendants. Defendants' motion relied exclusively on the plain terms of Plan itself, and the Court's written decision approving the Plan (over CEIPTF's objections).

In response, Plaintiffs now claim that they to re-open class certification discovery to pursue discovery into extrinsic evidence or parol evidence on the true meaning or intent of the Plan and the Bankruptcy Court's approval order.[23]

A.     Defendants Timely Raised the Release and Injunction at the Class Certification Stage.

Plaintiffs first suggest that Defendants did not timely raise the argument that the Release and Injunction prohibits members of the putative class who failed to opt out of the Plan from participating in this action. In particular, Plaintiffs complain that Defendants raised the issue in their opposition to Plaintiffs' class certification motion "two months after the class certification deadline passed and nearly 1.5 years after the Confirmation Order was entered." To the contrary, Defendants raised the argument at the earliest possible opportunity. Defendants could not have raised the argument in their motion to dismiss because the Plan was confirmed in March 2022, after Defendants' motion to dismiss was filed. Nor could Defendants have raised the argument in their reply brief, both because doing so would have been a new argument not raised in the opening brief and because, at that time, CEIPTF was the sole named plaintiff and had opted out of the Plan on its own behalf. Arguing at the motion to dismiss stage that potential members of a putative class had released their claims makes no sense. Instead, Defendants conducted the class certification discovery they needed, such as confirming at the deposition of COSPORP that COSPORP had not, in fact, opted out of the Plan, and then raised the argument in their opposition to class certification.

---

[22]   The parties have served, but not yet filed, the class certification brief in accordance with this Court's instructions to follow former Appendix N.

[23]   Mallinckrodt's full objection to Plaintiffs' request for untimely class certification discover is set forth in its responses and objections. *See* Ex. A.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page  10

    B. <u>Plaintiffs Were Fully Aware of the Release and Injunction Based on Their Active Litigation in the Bankruptcy.</u>

  Plaintiffs make the baseless claim that they had "no insight" into the impact of the Release and Injunction on the putative *Strougo* class until Defendants served their opposition brief.[24]  As a preliminary matter, that assertion is belied entirely by the fact that Plaintiffs previously litigated and lost the same issues raised by Defendants' Release and Injunction argument:  whether the Release and Injunction was binding and effective against putative *Strougo* class members who did not opt out of the Plan.  CEIPTF objected to the Plan, arguing, among other things, that that the Release and Injunction were "impermissible non-consensual releases" and that putative *Strougo* class members were being treated differently than class members in the unrelated *Shenk* action. The Bankruptcy Court approved the Plan and affirmatively rejected all of CEIPTF's arguments. *See generally* Ex. D.

As a threshold matter, the Bankruptcy Court found that CEIPTF opted out of the Plan only on behalf of itself because CEIPTF did not file a motion seeking class certification in bankruptcy or otherwise request the Bankruptcy Court's permission to act on behalf of a class.  *See* Ex. D at 45 n.114 ("[W]hile [CEIPTF] argues it has opted out on behalf of all of the Strougo Plaintiffs, . . . because the putative class in the Strougo Action was never certified, [CEIPTF] could not have opted out on [the putative class's] behalf. <u>[CEIPTF] could have filed a motion in this Court seeking class certification, but it failed to do so</u>. Accordingly, [CEIPTF]'s opt out form is valid only with respect to [CEIPTF].").[25]  With respect to the merits of CEIPTF's objections to the Release and Injunction, the Bankruptcy Court found that the Release and Injunction were valid because Mallinckrodt provided a comprehensive notice program, including direct mailings, website postings, and newspaper publications, and that notice clearly described how to opt out and what would happen to a shareholder's claims if it did not.  *See* Ex. D at 46-52.

  The Bankruptcy Court also rejected CEIPTF's argument that the Plan impermissibly treated putative *Strougo* class members and *Shenk* class members differently, again emphasizing that "CEIPTF does not have standing to object on behalf of the putative class in the Strougo Action. The purported class proof of claim was filed without permission of the Court, the putative class

---

[24] Plaintiffs also claim that "Mallinckrodt's counsel acknowledge that [the Release and Injunction] argument is unprecedented," which Plaintiffs use as synonymous with "impossible to have predicted."  First, Mallinckrodt is no longer a party to this action.  Second, Defendants agreed in a meet and confer with Plaintiffs that the argument is without precedent, that is, they have not located to date any reported decisions addressing a situation in which a release and injunction approved by a bankruptcy court subsequently limits class member eligibility in a securities class action where, as here, the lead plaintiff failed to obtain bankruptcy approval to object to or opt out of a plan on behalf of a putative class.  The facts here are unusual because, in other instances of securities class actions pending at the time of bankruptcy, either a class already is certified, and the class representative can act on behalf of the class in the bankruptcy, or a lead plaintiff seeks leave to represent the class in the bankruptcy and is able to object to or opt out of a plan on behalf of the entire class.

[25] Plaintiffs' Proposed All Purchasers Class is a collateral attack on the Bankruptcy Court's order.  After finding that CEIPTF did not have standing to opt out of the Releases or the Plan on behalf of the putative *Strougo* class, the Bankruptcy Court noted that "[t]o the extent any of the Strougo Plaintiffs did not receive notice of their rights to opt out or were otherwise unaware of that option, they are free to file a motion seeking relief from the Third-Party Releases and they will have the opportunity to be heard." *Id*.

February 21, 2024
Page 11

was not certified prepetition, class certification was not sought in this proceeding, and the purported class proof of claim was expunged without objection from [CEIPTF]." *See* Ex. D at 18. The Bankruptcy Court further concluded that the Plan treated all holders of litigation claims the same because all were offered the option to either "opt out of the Third-Party Releases and litigate the claims at a later date or choose not to opt out and release their claims." *See* Ex. D at 20.

CEIPTF appealed the Bankruptcy Court's decision, noting the issues on appeal included "[w]hether the [P]lan is discriminatory because it carved out from the third-party releases [the *Shenk* plaintiffs], but not the *Strougo* Plaintiffs." *See* Ex. 1 at 9-10.[26]

Given the extent of CEIPTF's challenges to the releases in the Plan, and the ultimate decision of the Bankruptcy Court to approve the Plan and reject CEIPTF's attempts to act on behalf of the putative *Strougo* class, Plaintiffs were well aware that the Release and Injunction would affect certification of the class in this action, and any suggestion that they were surprised by Defendants' arguments strains credulity.

C.   Plaintiffs Have Not Demonstrated a Need for Additional Discovery.

Plaintiffs claim they need additional discovery so that they can seek clarification from the Bankruptcy Court about the meaning of the Release and Injunction, but Plaintiffs do not explain why they need discovery to do so. Defendants arguments regarding the Release and Injunction are based on the plain text of the Plan and the Bankruptcy Court's approval order. The testimony and briefing that was before the Bankruptcy Court is a matter of public record, and Plaintiffs are free to use it in any reply briefing on the class certification motion.[27] Plaintiffs do not explain why internal Mallinckrodt documents – documents not before the Bankruptcy Court when it issued the opinion approving the Plan – are appropriate for the Bankruptcy Court to consider now.[28]

Plaintiffs argue that testimony from Mr. Welch, argument from Mallinckrodt's bankruptcy counsel, Mr. Harris, and a portion of the Bankruptcy Court's opinion confirming the Plan indicate the existence of discoverable information. But both Mr. Welch and Mr. Harris were merely referring to a portion of the Release that excludes certain claims. The actual text of the carve-out states that the Release and Injunction do not apply with respect to "any act or omission" by a director or officer "**that is determined by Final Order** of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful

---

[26]   A copy of CEIPTF's Designation of Record and Statement of Issues on Appeal Pursuant to Fed. R. Bankr. P. 8009(a) is attached as Exhibit 1.

[27]   Plaintiffs also are free – and have been free at all times – to seek relief from the Bankruptcy Court at any time, which does not constitute "discovery." They have not done so.

[28]   Plaintiffs rely on *Hall v. Johnson & Johnson*, 2023 WL 9017023, at *7 (D.N.J. Dec. 29, 2023), to argue that re-opening class certification is appropriate. But *Hall* did not address whether class certification discovery should be re-opened; it addressed whether existing evidence regarding class certification should be considered by the Court. Plaintiffs do not have new evidence, nor have they explained what evidence they might find that would change the plain text of the Plan. As such, Plaintiffs' request to re-open class certification should be denied.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page  12

misconduct."  Ex. 2 (emphasis added).[29]  The fact Mr. Welch and Mr. Harris used shorthand and did not recite the entirety of the carve-out does change the plain language of the plan that requires a final adjudication of fraud for the carve-out to apply.  Indeed, the language Plaintiffs quote from the Bankruptcy Court's opinion notes (in a portion of the quote not emphasized by Plaintiffs) that "[t]he Third-Party Releases also specifically exclude certain types of claims, including any cause of action **that is determined to constitute** actual fraud, gross negligence, or intentional misconduct."  Ex. D at 45 (emphasis added).

> D.      Defendants Pursued Bankruptcy-Related Discovery During Class Certification Discovery.

Plaintiffs claim that they should be permitted to reopen class certification discovery because Defendants did not sufficiently foreshadow their Release and Injunction argument for Plaintiffs.  This argument should be rejected for two main reasons.

First, Defendants have no obligation to share in advance arguments they intend to make at class certification, especially where the entire basis of Defendants' argument is a matter of public record in a proceeding **in which CEIPTF participated and lost**.  As explained above, Plaintiffs were well aware of the impact of the Release and Injunction because CEIPTF actively litigated the issue, opted out of the Plan for itself, and appealed the Bankruptcy Court's opinion finding that the Release and Injunction were valid as against absent class members who did not opt out.  Why spend the time and effort CEIPTF spent litigating before the Bankruptcy court if the Release and Injunction had no impact on the membership of the putative *Strougo* class?

Second, Defendants repeatedly raised the bankruptcy issue during class certification discovery.  In the 30(b)(6) notices to Plaintiffs, Defendants included Topic 8, "Information Related to Your participation in the Bankruptcy Action, including Your efforts to submit a proof of claim in the Bankruptcy Action on behalf of the putative class in the above-captioned action, and opt out of any or all aspects of the Bankruptcy Plan."  CEIPTF agreed to testify at their 30(b)(6) depositions "about the fact that Plaintiff submitted a proof of claim in the Bankruptcy Action and objected to the Bankruptcy Plan."

Plaintiffs' assertion that Defendants did not show the Plan to CEIPTF's or COSPORP's corporate designee is misleading.  As a preliminary matter, questioning (in particular, a non-lawyer) about the text of the Plan itself was unnecessary, as Defendants' arguments is a legal argument regarding the plain language of the Release and Injunction.  Moreover, while Defendants did not introduce the Plan as an exhibit at either deposition, Defendants asked questions about the bankruptcy, its impact on the *Strougo* litigation, and showed CEIPTF other bankruptcy filings.  For example, CEIPTF was shown a copy of CEIPTF's claim filed in the bankruptcy and asked its understanding of what happened with the proof of claim.  CEIPTF responded that it understood

---

[29]    A relevant excerpt of the Plan is attached as Exhibit 2.

February 21, 2024
Page 13

that the "claim survived" and that the "class action lawsuit can go forward." 83:14-25.[30] COSPORP was asked whether it opted out of the Plan, and it confirmed it had not. 82:17-23.[31]

II.    Plaintiffs' Request to Exceed the Ten-Deposition Limit

Plaintiffs' request to take 35 depositions – exceeding the limit set out in the Federal Rules of Civil procedure by 25 depositions – should be denied. Instead, Plaintiffs should be permitted to take 20 depositions – already double the limit – and then, based on the testimony provided by those witnesses, confer with Defendants about whether additional depositions are warranted.

"[A] party seeking more than ten depositions must overcome this presumptive limit [of ten depositions] by demonstrating that the additional depositions are reasonable and necessary." *Ala. Elec. Pension Fund v. Pharmacia Corp.*, No. CIV.A. 03-1519 (AET), 2006 WL 6487632, at *3 (D.N.J. Aug. 22, 2006). Recognizing that courts in the Third Circuit had not analyzed at length the standard for seeking additional depositions, the *Pharmacia* Court looked to district courts around the country and concluded that a party seeking to exceed the ten-deposition limit must: (1) have commenced discovery, including exhausting available depositions; (2) identify with specificity each person to be deposed; and (3) make a 'particularized' showing of need for additional depositions. *Id.* at *3-4 (collecting cases). For the particularized showing, "the moving party must go beyond general assertions regarding the potential relevance of the proposed deponents' testimony to demonstrate that the probably testimony of each proposed deponent is essential to the moving party's case." *Id.* at *4. Plaintiffs here have not met any of the three prongs identified by the *Pharmacia* Court.

First, Plaintiffs have not taken a single deposition. While the parties have commenced document discovery,[32] Plaintiffs have not even **noticed** a single deposition, aside from an incredibly broad 30(b)(6) deposition notice directed to non-party Mallinckrodt. Courts regularly deny leave for additional depositions when no depositions have yet been taken. *See, e.g.*, *Chabot v. Walgreens Boots All., Inc.*, No. 1:18-CV-2118, 2021 WL 949443, at *3 (M.D. Pa. Mar. 12, 2021) (denying plaintiff's request for two additional depositions where no depositions had yet been taken); *Raba v. Suozzi*, No. CV061109, 2006 WL 8435603, at *1 (E.D.N.Y. Nov. 17, 2006) (denying plaintiffs motion to take an additional eight depositions and stating that "[t]he mere fact that there are several individuals who may possess relevant information does not necessarily entitle a party to examine each of them").

---

[30]    The relevant excerpt of the 30(b)(6) deposition of CEIPTF is attached as Exhibit 3.

[31]    The relevant excerpt of the 30(b)(6) deposition of CEIPTF is attached as Exhibit 4.

[32]    Plaintiffs conflate Mallinckrodt and Defendants on several occasions in this letter. First, Defendants have not produced "over 149,000 documents on behalf of at least 77 individual custodians, and dozens of group custodians that comprise undefined individuals." The majority of those documents have been produced by non-party Mallinckrodt pursuant to a non-party subpoena. Second, with respect to the Rule 30(b)(6) notice served on Mallinckrodt, Mallinckrodt took the position that, because it is a non-party, Plaintiffs should first take the 20 witnesses to which Defendants agreed before seeking to burden non-party Mallinckrodt with an incredibly broad 30(b)(6) deposition. Mallinckrodt's position remains the same – that all permitted depositions should proceed before any 30(b)(6) deposition of Mallinckrodt – regardless of whether Defendants agree to more or fewer depositions.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page  14

Second, Plaintiffs have refused to provide the identities of any potential deponents.  While Plaintiffs claim they would suffer prejudice by doing so, courts regularly require the disclosure of at least the identities of the additional deponents when a plaintiff is seeking leave to exceed the ten-deposition limit.  *See Pharmacia Corp.*, 2006 WL 6487632, at *3 (citing cases); *cf. Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2021 WL 3403470, at *3-4 (E.D. Pa. Aug. 3, 2021) (permitting three additional depositions where plaintiff had "exhausted its available depositions and identified the proposed deponents by name" and shown particularized need for the testimony).  Plaintiffs cannot justify the need to exceed the ten-deposition limit without providing particularized detail explaining the additional testimony they seek and why that testimony is not duplicative or otherwise unnecessary under the Federal Rules.

Third, Plaintiffs have not made any particularized showing as to why the testimony from the extra 25 witnesses is essential to their case.  Instead, Plaintiffs argue that they are entitled to take 35 depositions because:  (1) Plaintiffs identified a large number of individuals and entities in their initial disclosures; (2) certain roles at Mallinckrodt were occupied by different individuals over time; and (3) Plaintiffs allegations cover a long time period.  None of these reasons provide sufficient particularity.  *Cf. Peninsula Components*, 2021 WL 3403470, at *4 (finding plaintiff made a showing of "particularized need" for testimony rather than "blanket assertions of relevance").

Without providing an adequate showing, Plaintiffs should be limited to 20 depositions.[33]

III.    <u>Defendants' Request for a Sur-Reply to Address New Evidence</u>

On January 12, 2024, Plaintiffs requested Defendants' position on Plaintiffs' request to file a 40-page reply brief in further support of Plaintiffs' class certification motion, 160% longer than the Court's standard 15-page limit for reply briefs.  Defendants told Plaintiffs that they did not oppose the request, and then requested that Plaintiffs also not oppose a request from Defendants for a sur-reply if Plaintiffs introduce new facts or topics in that reply that were not referenced in Plaintiffs' opening brief.  Plaintiffs have refused to confirm whether they will oppose Defendants' request for a sur-reply, arguing that Defendants should wait until Plaintiffs' reply is filed.

Defendants sought Plaintiffs' position at this time so that any opposition to Defendants' request for a sur-reply could be raised at the February 27 conference with the other issues in this letter.  It is clear from the parties' meet-and-confer efforts (and confirmed by the content of this letter) that Plaintiffs are intending to introduce a variety of new facts not included in their opening brief.  Plaintiffs are seeking additional discovery and, according to this letter, a "clarifying" order from Judge Dorsey in the United States Bankruptcy Court for the District of Delaware.  If Plaintiffs do not intend to include any of these facts in their reply, then such discovery is wasteful.  If Plaintiffs do intend to include these facts in their reply, then Defendants will need a sur-reply to

---

[33]    Plaintiffs rely on decisions in *Hall* and *Valeant* as justifying their request for additional depositions, but both of those matters differ significantly from this case.  For example, the defendants in *Valeant* were Valeant, fifteen individual defendants, Valeant's outside auditor, and a family of investment advisers.  The discovery issues in *Valeant* were complex enough to warrant the appointment of a special master to handle discovery disputes.  Further, in both cases, the parties agreed to the deposition limits.  *See* Exs. O-P.

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION

February 21, 2024
Page  15

adequately address this new information not available to them based on Plaintiffs' opening brief. Defendants therefore request leave to file a sur-reply in response to Plaintiffs' reply brief if Plaintiffs introduce new facts or topics in that reply that were not referenced in Plaintiffs' opening brief.

*    *    *

The parties appreciate the Court's time and attention to these issues and look forward to discussing them further at the February 27, 2024 status conference.  The parties are available in the meantime to answer any questions from the Court in advance of the status conference.

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
 BRODY & AGNELLO, P.C.

*/s/ James E. Cecchi*
JAMES E. CECCHI

CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
A PROFESSIONAL CORPORATION