CARELLA, BYRNE, CECCHI,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
KEVIN G. COOPER
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

Local Counsel for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA STROUGO, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>MALLINCKRODT PUBLIC LIMITED COMPANY, et al.,<br><br>                              Defendants. | No. 3:20-cv-10100-RK (TJB)<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE TO THE CLASS |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   PROCEDURAL HISTORY OF THE LITIGATION .....................................4

III.  THE SETTLEMENT TERMS .......................................................................9

IV.   THE SETTLEMENT RESULTED FROM ARM'S-LENGTH
      SETTLEMENT NEGOTIATIONS...............................................................11

V.    PRELIMINARY APPROVAL IS WARRANTED AND WILL
      ALLOW PLAINTIFFS TO NOTIFY THE CLASS ....................................12

      A.    The Proposed Settlement Is Fair ........................................................15

      B.    The Benefits Under the Settlement Are Adequate.............................19

      C.    The Other Rule 23(e)(2) Factors Are Met..........................................22

            1.    The Proposed Method for Distributing Relief Is Effective ......23

            2.    Attorneys' Fees and Expenses ..................................................24

            3.    The Parties Have No Other Agreements Besides an
                  Agreement to Address Requests for Exclusion ......................25

            4.    Class Members Are Treated Equitably.....................................26

VI.   CERTIFICATION OF THE CLASS FOR SETTLEMENT
      PURPOSES IS APPROPRIATE...................................................................27

            1.    The Class Satisfies the Requirements of Rule 23(a) ...............27

            2.    The Class Satisfies the Requirements of Rule 23(b)(3)...........31

            3.    Lead Counsel Should Be Appointed Counsel for the
                  Class ..........................................................................................33

4862-1609-2631.v1

**Page**

VII.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND
DUE PROCESS ................................................................................34

    A.  Retention of Verita Global as Claims Administrator .........................34

    B.  Proposed Notice Procedures................................................................34

VIII.  PROPOSED SCHEDULE OF EVENTS ......................................................37

IX.  CONCLUSION ...........................................................................................38

4862-1609-2631.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alves v. Main*,
 2012 WL 6043272 (D.N.J. Dec. 4, 2012),
 *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ............................................................17

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)....................................................................................27, 32

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013)............................................................................................30

*Baby Neal for & by Kanter v. Casey*,
 43 F.3d 48 (3d Cir. 1994) ..................................................................................29

*Beltran v. SOS Ltd.*,
 2023 WL 319895 (E.D. Pa. Jan. 3, 2023)
 *report & recommendation adopted*, 2023 WL 316294
 (D.N.J. Jan. 19, 2023) ........................................................................................25

*Bredbenner v. Liberty Travel, Inc.*,
 2011 WL 1344745 (D.N.J. Apr. 8, 2011)..........................................................19

*Chabot v. Walgreens Boots Alliance, Inc.*,
 2024 WL 3250930 (M.D. Pa. Feb. 7, 2024).....................................................16

*Curiale v. Lenox Grp., Inc.*,
 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ...................................................13

*Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*,
 2024 WL 3360661 (E.D. Pa. July 10, 2024) ....................................................17

*Doherty v. Hertz Corp.*,
 2014 WL 2916494 (D.N.J. June 25, 2014).........................................................31

*Ehrheart v. Verizon Wireless*,
 609 F.3d 590 (3d Cir. 2010) ..............................................................................12

*Girsh v. Jepson*,
 521 F.2d 153 (3d Cir. 1975) ......................................................................*passim*

**Page**

*Howard v. Arconic Inc.*,
No. 2:17-cv-01057-MRH, ECF 253
(W.D. Pa. Aug. 9, 2023) ...................................................................24

*Hoxworth v. Blinder, Robinson & Co.*,
980 F.2d 912 (3d Cir. 1992) ............................................................30

*Huffman v. Prudential Ins. Co. of Am.*,
2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)......................................18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014).......................................................36

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..............................................21

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ............................................................31

*In re Cigna Corp Sec. Litig.*,
2006 WL 2433779 (E.D. Pa. Aug. 18, 2006) ...................................28

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008),
*aff'd*, 639 F.3d 623 (3d Cir. 2011)...........................................27, 29

*In re Eros Int'l PLC Sec. Litig.*,
2023 WL 8519091 (D.N.J. Nov. 28, 2023) ......................................24

*In re Heckmann Corp. Sec. Litig.*,
2013 WL 2456104 (D. Del. June 6, 2013) .......................................32

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012).......................................................15, 19

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)...........................................................25

4862-1609-2631.v1

**Page**

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................................15

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    775 F.3d 570 (3d Cir. 2014) ...............................................................................27

*In re PAR Pharm. Sec. Litig.*,
    2013 WL 3930091 (D.N.J. July 29, 2013) ...................................................19, 22

*In re Processed Egg Prods. Antitrust Litig.*,
    2014 WL 828083 (E.D. Pa. Feb. 28, 2014) ......................................................15

*In re Schering-Plough/Merck Merger Litig.*,
    2010 WL 1257722 (D.N.J. Mar. 26, 2010) ...................................................15, 18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ......................................................24

*In re Valeant Pharms. Intl., Inc.*,
    2021 WL 358611 (D.N.J. Feb. 1, 2021),
    *aff'd sub nom.*, *TIAA v. Valeant Pharms., Int'l Inc.*,
    2021 WL 6881210 (3d Cir. Dec. 20, 2021) ......................................................16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .......................................................................13, 18, 26

*Jones v. Com. Bancorp, Inc.*,
    2007 WL 2085357 (D.N.J. July 16, 2007) ...................................................13, 37

*Kress v. Fulton Bank, N.A.*,
    2021 WL 9031639 (D.N.J. Sept. 17, 2021).......................................................29

*Lincoln Adventures LLC v. Those Certain Underwriters
    at Lloyd's, London Members*,
    2019 WL 4877563 (D.N.J. Oct. 3, 2019) ..........................................................17

*Nafar v. Hollywood Tanning Sys., Inc.*,
    2008 WL 3821776 (D.N.J. Aug. 12, 2008) .......................................................33

**Page**

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001) ...............................................................29

*Osgood v. Harrah's Ent., Inc.*,
  202 F.R.D. 115 (D.N.J. 2001)..............................................................30

*Roofer's Pension Fund v. Papa*,
  333 F.R.D. 66 (D.N.J. 2019)................................................................32

*Smith v. Suprema Specialties, Inc.*,
  2007 WL 1217980 (D.N.J. Apr. 23, 2007).........................................31

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ...............................................................28

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...............................................................29

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)..............................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................29

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D. 136 (D.N.J. 2002),
  *aff'd*, 84 F. App'x 257 (3d Cir. 2004)................................................31

*Yang v. Odom*,
  392 F.3d 97 (3d Cir. 2004),
  *abrogated by China Agritech v. Resh*,
  584 U.S. 732 (2018)..............................................................................27

4862-1609-2631.v1

Page

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§78j(b) ..................................................................................................4
§78t(a) ..................................................................................................4
§78u-4(a)(4) ...........................................................................4, 5, 10, 25

Federal Rules of Civil Procedure
Rule 23 ...................................................................27, 34, 36, 38
Rule 23(a) ..........................................................................................27
Rule 23(a)(1) .....................................................................................28
Rule 23(a)(2) .....................................................................................28
Rule 23(a)(3) .....................................................................................29
Rule 23(a)(4) .....................................................................................30
Rule 23(b)(3) ........................................................................28, 31, 32
Rule 23(c)(2)(B) ................................................................................34
Rule 23(e) ...........................................................................3, 12, 13, 34
Rule 23(e)(1)(B) ...........................................................................13, 34
Rule 23(e)(2)(C)(ii) ..........................................................................23
Rule 23(e)(2)(C)(iii) .........................................................................23
Rule 23(e)(2)(C)(iv) .........................................................................23
Rule 23(e)(2) ...............................................................................*passim*
Rule 23(e)(2)(A) ...............................................................................16
Rule 23(e)(2)(B) ..........................................................................15, 18
Rule 23(e)(2)(C)(i) ...........................................................................19
Rule 23(e)(2)(C)(ii) ..........................................................................23
Rule 23(e)(2)(C)(iii) .........................................................................24
Rule 23(e)(2)(C)(iv) .........................................................................25
Rule 23(e)(2)(D) ...............................................................................26
Rule 23(e)(3) ...............................................................................14, 35
Rule 23(g) .........................................................................................33

17 C.F.R.
§240.l0b-5 .......................................................................................4, 5

26 C.F.R.
§1.468B-1 .........................................................................................10

**Page**

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation*,
    §21.63 (4th ed. 2004) ....................................................................13, 37

*Recent Trends in Securities Class Action Litigation: 2024 H1 Updated*,
    Edward Flores and Svetlana Starykh,
    (NERA Aug. 6, 2024) ...........................................................................22

*Federal Practice and Procedure: Civil 2d*
    7A Wright, Miller & Kane,
    §1788 (1986) .......................................................................................31

Lead Plaintiff Canadian Elevator Industry Pension Trust Fund[1] and named plaintiff City of Sunrise Police Officers' Retirement Plan (together, "Plaintiffs"), by and through their undersigned counsel of record, respectfully submit this Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to the Class.

## I.   INTRODUCTION

Plaintiffs respectfully request that the Court grant preliminary approval of the Settling Parties' proposed $46 million settlement.  The Settlement is the product of almost five years of hard-fought litigation among sophisticated parties and skillful counsel, and follows extensive, arm's-length mediation and settlement discussions overseen by David M. Murphy (of Phillips ADR), an experienced mediator.  As set forth in the Stipulation, the Settlement provides for the payment of $46 million in cash to resolve this securities class action brought by a putative class of Mallinckrodt common stockholders against ten current or former officers and directors of Mallinckrodt, *i.e.*, the Individual Defendants.  Mallinckrodt was previously a defendant in the Litigation, but was voluntarily dismissed in December 2022 due to the bankruptcy release obtained by Mallinckrodt in March 2022.  ECF 104.

---

[1]   All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation of Settlement, dated September 18, 2024 (the "Stipulation").  The Stipulation is annexed as Exhibit 1 to the Declaration of Michael G. Capeci ("Capeci Decl."), filed herewith.

The Settlement is a very good result for the Class, particularly when viewed in light of this Litigation's procedural history and the risks of proceeding through further litigation.  This Litigation arises out of Mallinckrodt's and the Individual Defendants' allegedly false and misleading statements and/or omissions of material facts regarding the following: (1) rebates Mallinckrodt owed to the U.S. government for sales of H.P. Acthar Gel ("Acthar") to Medicaid patients during the Class Period; (2) statements regarding Acthar sales for fiscal year 2019; and (3) failing to disclose the *Strunck*[2] litigation and related U.S. Department of Justice ("DOJ") intervention. Plaintiffs allege that these misstatements and omissions caused Mallinckrodt common stock to trade at artificially inflated prices during the Class Period. Plaintiffs further allege that these misrepresentations were publicly corrected through five distinct disclosures, upon which the price of Mallinckrodt stock fell dramatically each time, causing significant economic harm to Plaintiffs and the Class.  The Individual Defendants deny all of Plaintiffs' allegations.

Plaintiffs were well-informed of the strengths and weaknesses of their claims and the Individual Defendants' defenses as they negotiated the Settlement.  In addition to drafting the amended complaint, opposing the motion to dismiss,

---

[2]    The *Strunck* litigation refers to *U.S. ex rel. Strunck v. Mallinckrodt ARD LLC*, No. 2:12-cv-0175-BMS (E.D. Pa.), which was a *qui tam* case that alleged Mallinckrodt had engaged in off-label marketing for Acthar.

participating in both of Mallinckrodt's Chapter 11 bankruptcies in 2020 and 2023, and actively engaging in thorough and extensive discovery efforts, Plaintiffs have developed a robust factual record.

As detailed herein, the proposed Settlement before the Court is a very good result under the circumstances, and Plaintiffs respectfully request that the Court preliminarily approve it and approve the form and manner of providing notice of it to the Class.

At this first stage of settlement approval, courts are to evaluate whether they are likely to be able to approve the terms of a settlement under Rule 23(e) of the Federal Rules of Civil Procedure and under the standards in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). As discussed below, the Settlement easily meets these standards because it is a fair, reasonable, and adequate resolution for the Class, and balances the objective of securing the highest possible recovery against the substantial risks and costs of continued litigation, including the risk that the Class could receive nothing or an amount equal to or less than the Settlement Amount years into the future. Accordingly, Plaintiffs and Lead Counsel, who have pursued this Litigation from inception, believe that the Settlement is an outstanding result and is in the best interests of the Class.

Moreover, the Settlement is fair, reasonable, and adequate because, pursuant to the Stipulation, each Class Member is treated equitably. Each Class Member that

properly submits a valid Proof of Claim will receive a *pro rata* share of the monetary relief based on the terms of the Plan of Allocation.

Plaintiffs seek preliminary approval so that notice may be disseminated to the Class and a Settlement Hearing and other Settlement-related dates may be scheduled. In connection with the Settlement Hearing, Plaintiffs will ask the Court to make final determinations as to: (i) whether the Settlement is fair, reasonable, and adequate as a whole; (ii) whether the Plan of Allocation should be approved; (iii) an award of attorneys' fees and expenses to Plaintiffs' Counsel; and (iv) awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4).

## II.    PROCEDURAL HISTORY OF THE LITIGATION

On July 26, 2019, the initial complaint was filed in the United States District Court for the Southern District of New York by a purported individual investor in Mallinckrodt common stock.  On June 25, 2020, Judge Edgardo Ramos appointed Canadian Elevator as the lead plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.  ECF 42.  Shortly thereafter, on August 6, 2020, the case was voluntarily transferred from Judge Ramos to Judge Thompson of the United States District Court for the District of New Jersey.  ECF 45.

On August 10, 2020, Canadian Elevator filed the Amended Complaint alleging that Mallinckrodt and the Individual Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule l0b-5

- 4 -

promulgated thereunder (17 C.F.R. §240.10b-5), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  ECF 56.  The Amended Complaint alleged that Mallinckrodt and the Individual Defendants made numerous false and misleading statements and omissions about Acthar.  Specifically, these allegedly false and misleading statements concerned the following: (1) failing to disclose Mallinckrodt's illegal avoidance of paying rebates to the Centers for Medicare and Medicaid Services by knowingly using an improper base date average manufacturing price for Acthar; (2) giving false guidance for Acthar sales in May 2019 of over $1 billion; (3) failing to disclose the *Strunck* litigation and the related settlement of that litigation; and (4) omitting information about certain Acthar clinical trials.  *See id*.

On October 1, 2020, the Individual Defendants and Mallinckrodt moved to dismiss the Amended Complaint and on November 16, 2020, Canadian Elevator filed an opposition brief.  ECF 79, 84.  On December 10, 2020, Judge Thompson stayed the proceedings because Mallinckrodt filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware in October 2020.  ECF 89.

Canadian Elevator participated in Mallinckrodt's bankruptcy proceedings to protect the interests of the Class.  For example, during the 2020 bankruptcy proceedings, parties from a different securities fraud class action, *Shenk v.*

*Mallinckrodt plc, et al.*, No. 1:17-cv-00145-DLF (D.D.C.) ("*Shenk*"), entered into a settlement agreement that would have released the Class's claims from May 3, 2016 to November 6, 2017, if approved. To prevent this, Lead Counsel convinced counsel for the *Shenk* parties to carve out the Class's claims. *Shenk* received final settlement approval in 2022, and this Litigation was expressly carved out of that release. *See* Capeci Decl., Ex. 2. In addition, also during the 2020 bankruptcy proceedings, Canadian Elevator opted out of the bankruptcy release on its own behalf, and unsuccessfully attempted to do so on behalf of the Class. *See id.*, Ex. 3.

On March 21, 2022, Canadian Elevator informed Judge Thompson that Mallinckrodt had agreed to modify the bankruptcy injunction that had stayed this Litigation since December 2020 to allow the Individual Defendants to file a reply brief in support of their motion to dismiss and for the Court to rule on the pending motion. ECF 91. On March 29, 2022, Judge Thompson reinstated the Litigation against the Individual Defendants. ECF 93.

On April 19, 2022, the Litigation was reassigned to Judge Michael A. Shipp. ECF 94. On May 2, 2022, the Individual Defendants filed their reply brief in support of their motion to dismiss the Amended Complaint. ECF 95. On June 16, 2022, Mallinckrodt announced that its Chapter 11 bankruptcy plan was effective, and the Company emerged from bankruptcy proceedings. On December 14, 2022, Judge

- 6 -

Shipp ordered the voluntary dismissal without prejudice as to Mallinckrodt from the Litigation due to the bankruptcy discharge.  ECF 104.

On December 16, 2022, Judge Shipp issued a Memorandum Opinion denying the Individual Defendants' motion to dismiss the Amended Complaint, with the exception of Plaintiffs' allegations regarding Acthar's clinical trials.  ECF 105.  On January 17, 2023, the Individual Defendants answered the Amended Complaint, and on March 20, 2023, the parties attended an initial pretrial conference before Magistrate Judge Bongiovanni.  ECF 108, 116.  On May 15, 2023, the Litigation was reassigned to this Court.  ECF 117.

On February 16, 2023, the parties exchanged their first sets of discovery requests.  During discovery, Mallinckrodt and the Individual Defendants collectively produced over 155,000 documents.  Lead Counsel reviewed all of these documents, including those that were produced by Mallinckrodt during earlier government investigations involving the DOJ and Securities Exchange Commission ("SEC").  Plaintiffs also engaged in extensive discovery with third parties other than Mallinckrodt, and reviewed approximately 16,000 documents from those third parties.

Before moving for class certification, Plaintiffs retained Steven P. Feinstein, Ph.D., CFA, who prepared a Report on Market Efficiency and Damages Methodology.  In rebuttal, the Individual Defendants retained Paul Zurek, Ph.D.  On

- 7 -

May 29, 2023, Plaintiffs served Dr. Feinstein's Report on Market Efficiency and Damages Methodology and on June 30, 2023, the Individual Defendants served Dr. Zurek's rebuttal report. The parties proceeded through extensive class certification discovery efforts, including the deposition of Greg Manion, on behalf of Canadian Elevator, on July 18, 2023. The Individual Defendants took the deposition of Dr. Feinstein on July 27, 2023. On August 7, 2023, the Court granted Sunrise's unopposed motion to intervene as a named plaintiff, which Lead Plaintiff facilitated to address a possible standing issue that Defendants may have raised in the Litigation. ECF 123. On August 8, 2023, Plaintiffs took the deposition of Dr. Zurek. The Individual Defendants deposed David Williams, on behalf of Sunrise, on August 17, 2023.

On August 10, 2023, Plaintiffs served a motion for class certification on the Individual Defendants, and on August 21, 2023, Plaintiffs served a motion to exclude the opinions and report of Dr. Zurek on the Individual Defendants. On October 10, 2023, the Individual Defendants served an opposition to Plaintiffs' motion for class certification and on December 22, 2023, the Individual Defendants served an opposition to Plaintiffs' motion to exclude the opinions and report of Dr. Zurek. Plaintiffs' reply briefs to their motions for class certification and to exclude the opinions and report of Dr. Zurek were pending when the Settlement was reached. ECF 129, 134, 136-141.

4862-1609-2631.v1

On February 21, 2024, Plaintiffs filed a letter addressed to Magistrate Judge Bongiovanni outlining the parties' ongoing discovery disputes and on March 7, 2024, Magistrate Judge Bongiovanni stayed the Litigation pending the parties' mediation efforts.    ECF 131-136.    Plaintiffs and the Individual Defendants participated in a mediation session with Mr. Murphy (of Phillips ADR) on March 21, 2024.  In advance of that session, the Settling Parties submitted to Mr. Murphy and exchanged detailed opening and reply mediation statements.  The Settling Parties engaged in good-faith negotiations but were unable to reach an agreement. The Settling Parties engaged in continued mediation efforts following the conclusion of the March 21, 2024 mediation session.

On May 23, 2024, the Settling Parties attended a second mediation session and again engaged in good-faith negotiations but were unable to reach an agreement. Following additional settlement discussions, on June 7, 2024, the Settling Parties accepted the mediator's proposal to settle the Litigation in return for a cash payment of $46 million.

## III.    THE SETTLEMENT TERMS

Under the agreed-upon terms of the Settlement, the Individual Defendants will pay or cause to be paid $46 million into the Escrow Account, which amount, plus accrued interest, constitutes the Settlement Fund.

First, the costs associated with providing notice to the Class, and subsequent settlement administration ("Notice and Administration Expenses"), will be funded out of the Settlement Fund.  Plaintiffs propose that nationally recognized class action settlement administrator Verita Global be approved to provide notice and claims administration services in connection with the Settlement.

Second, because the Settlement Fund is a "qualified settlement fund" within the meaning of Treasury Regulation §1.468B-1 (26 C.F.R. §1.468B-1), the income earned on the Settlement Fund is taxable.  All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid out of the Settlement Fund.

Third, assuming the Court grants preliminary approval of the Settlement, Plaintiffs will subsequently move, at the time the Court sets, for final approval of the Settlement.  Concurrent with Plaintiffs' final-approval motion, Lead Counsel will submit an application on behalf of Plaintiffs' Counsel for an award of attorneys' fees not to exceed one-third of the Settlement Amount and payment of expenses and charges resulting from the prosecution of the Litigation not to exceed $1.5 million, plus interest earned on both amounts.  Such awards and expenses shall be paid from the Settlement Fund upon entry of the order awarding such fees and expenses.  In addition, Plaintiffs will each seek an award of $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

Fourth, once Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, and any other fees or expenses approved by the Court have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following that distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing of their Mallinckrodt common stock purchases and sales.

In exchange for the benefits provided under the Stipulation, Class Members will release any and all claims against the Individual Defendants and Mallinckrodt based on, or related in any way to: (1) the purchase or acquisition of Mallinckrodt common stock at any time between May 3, 2016, and March 13, 2020, inclusive; and (2) the facts, matters, statements, or omissions alleged in the Litigation. Capeci Decl., Ex. 1, ¶1.27.

## IV.    THE SETTLEMENT RESULTED FROM ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

The Settling Parties' initial mediation session occurred on March 21, 2024. In advance of that session, the Settling Parties exchanged (and submitted to Mr. Murphy) detailed opening and reply mediation statements addressing liability, class certification, and damages. The mediation briefs addressed the specific evidence

and legal arguments each side believed supported their respective claims and defenses. The Settling Parties engaged in good-faith negotiations but did not reach a settlement at this mediation session.

The Settling Parties participated in a second mediation session on May 23, 2024. The Settling Parties engaged in good-faith negotiations but did not reach an agreement at the second mediation session. Following additional settlement discussions, on June 7, 2024, the Settling Parties accepted a mediator's proposal to settle the Litigation in return for a cash payment of $46 million, subject to negotiation of a Stipulation of Settlement and approval by the Court following notice to the Class.

## V.    PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW PLAINTIFFS TO NOTIFY THE CLASS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.").[3] It is well established in this Circuit that the settlement of class-action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be

---

[3]    Emphasis is added and citations are omitted throughout unless otherwise noted.

conserved by avoiding formal litigation.'"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("'The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) ordering dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004).  At this juncture, Plaintiffs request that the Court: (1) enter the proposed Preliminary Approval Order; (2) certify the Class for settlement purposes; (3) order the dissemination of notice to the Class; and (4) set a time for the final approval hearing and other deadlines relevant thereto.

Pursuant to Rule 23(e), preliminary approval should be granted if the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Com. Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to

directing that notice be given to members of the settlement class.").  Rule 23(e)(2)

provides:

> (2)    Approval of the Proposal.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  These factors overlap with those set forth by the Third

Circuit in *Girsh*, which include:

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range

- 14 -

of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."[4]

521 F.2d at 157.  It has long been the case that "[t]he preliminary approval determination requires the Court to consider whether '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *In re Processed Egg Prods. Antitrust Litig.*, 2014 WL 828083, at *2 (E.D. Pa. Feb. 28, 2014) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).  These factors warrant preliminary approval here.

## A.    The Proposed Settlement Is Fair

The first two factors for the Court's consideration under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations.  *See* Rule 23(e)(2)(A)-(B).  These two factors dovetail into the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed.  *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("[A] presumption of fairness exists where a settlement has been

---

[4]    The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'"  *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

- 15 -

negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

Here, the Settlement is presumptively fair because it was the result of extensive arm's-length negotiations conducted by experienced counsel before an experienced mediator, and the Settling Parties had an adequate understanding of the merits of the Litigation.

*First*, Plaintiffs and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on its behalf, including, among other things, drafting complaints, opposing the motion to dismiss, engaging in extensive discovery efforts, participating in Mallinckrodt's bankruptcy proceedings, briefing class certification, including expert discovery, and participating in formal mediation.

Lead Counsel are highly competent lawyers who possess substantial experience in prosecuting complex securities class actions in this Circuit and throughout the country, and have successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See In re Valeant Pharms. Intl., Inc.*, 2021 WL 358611, at *6 (D.N.J. Feb. 1, 2021) (Shipp, J.) ("'[Robbins Geller] has a successful track record of prosecuting securities class actions.'"), *aff'd sub nom.*, *TIAA v. Valeant Pharms., Int'l Inc.*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021); *Chabot v. Walgreens Boots Alliance, Inc.*, 2024 WL 3250930, at *1 (M.D. Pa. Feb.

- 16 -

7, 2024) ("Lead Counsel [Robbins Geller] pursued the Action and achieved the Settlement with skill, perseverance, and diligent advocacy."); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action"); *Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, 2024 WL 3360661, at *3 (E.D. Pa. July 10, 2024) ("Robbins Geller's resume demonstrates that lead counsel have excellent experience and success in class action settlements.").

Moreover, the Court-appointed Plaintiffs are sophisticated institutional investors, overseeing millions of dollars of investments. The collective experience, expertise, and tenacity of Lead Counsel, and the sophistication of Plaintiffs, led to this very good result, which will provide significant and immediate relief to the Class.

Lead Counsel's efforts over the four-year course of the case provided a strong base upon which to evaluate the relative strengths and weaknesses of the claims and defenses in this Litigation. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("[C]ourts in this Circuit traditionally 'attribute significant

weight to the belief of experienced counsel that settlement is in the best interest of the class.'"), *aff'd*, 559 F. App'x 151 (3d Cir. 2014); *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *4 (E.D. Pa. Apr. 5, 2019) (The court should "'give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action.'").

Given Lead Counsel's efforts detailed in §II herein, there can be no doubt that "'counsel had an adequate appreciation of the merits of the case before negotiating'" the Settlement. *Warfarin*, 391 F.3d at 537; *Schering-Plough*, 2010 WL 1257722, at *10.

***Second***, the Settlement was negotiated at arm's length, as contemplated by Rule 23(e)(2)(B).  As detailed above in §II, the Settling Parties' settlement negotiations involved formal mediation with an experienced mediator.  The negotiations were vigorous and adversarial, and the Individual Defendants are represented by highly sophisticated counsel at Hogan Lovells US LLP.  It was not until after two full days of formal mediation, along with additional negotiations between those sessions and after the second session, that Mr. Murphy issued a "mediator's proposal" that recommended that the case settle for $46 million, which the Settling Parties ultimately accepted.  Mr. Murphy's direct participation further ensures that negotiations were non-collusive and conducted at arm's length.

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'").

## B.     The Benefits Under the Settlement Are Adequate

Rule 23(e)(2)(C)(i), which overlaps with *Girsh* in many respects (*i.e.*, factors 1, 4-9), instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation). This element of Rule 23(e)(2)(C)(i) also weighs in favor of approval.

"Securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). This Litigation would face a significant risk of substantial delay before ultimate resolution, including delays associated with the completion of fact and expert discovery, class certification, summary judgment, trial, and potential appeals that could last for years into the future. *See Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay,

- 19 -

and have also provided an immediate benefit to the Settlement Class."). The near-term relief that the Settlement provides to Class Members warrants approval in light of the delays inherent in continued litigation.

Further, the relief is fair, reasonable, and adequate considering the risks of continued litigation, which would require Plaintiffs to prove (and defeat the Individual Defendants' counterarguments regarding) falsity, materiality, scienter, loss causation, class certification, and damages at trial. *See Girsh*, 521 F.2d at 157 (risks of establishing liability, damages, and maintaining a class action support settlement approval).

Although Plaintiffs believe their case is strong, they acknowledge, as they must, there are risks to litigation and ultimate recovery. The Individual Defendants' arguments, including the arguments in their motion to dismiss and class certification briefing, highlight the risks Plaintiffs would face in overcoming summary judgment and ultimately proving their claims at trial. For example, on November 30, 2023, the SEC instituted a cease-and-desist order against Mallinckrodt, finding that the Company violated §§17(a)(2) and 17(a)(3) of the Securities Act of 1933, §13(a) of the Investment Company Act of 1940, Rules 12b-20, 13a-1, 13a-13, and §§13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act. Capeci Decl., Ex. 4. While the SEC was focused on allegations similar to those alleged in this Litigation, the Individual Defendants will likely argue that the cease-and-desist order in fact

undermines Plaintiffs' allegations because the SEC was focused on a shorter class period, did not enforce any monetary penalty, did not allege fraud, and did not involve findings or charges involving any of the Individual Defendants personally.

The Individual Defendants also argue that Plaintiffs' allegations concerning ASC 450 will ultimately fail as nonactionable opinion statements, that the statements about Mallinckrodt's Acthar net sales for fiscal year 2019 are protected by the safe-harbor provision, that the statements about the *Strunck* Litigation were not material, and that Plaintiffs will be unable to prove scienter against each Individual Defendant. Further, the Individual Defendants maintain and will continue to dispute Plaintiffs' alleged damages – which they argue are non-existent, or at best very small. These arguments, among others that the Individual Defendants were pursuing, present significant risks for Plaintiffs on summary judgment and ultimately at trial.

Moreover, Plaintiffs' claims would be subject to complex expert testimony, offered by the Individual Defendants' experts that would likely conflict with Plaintiffs' experts' analyses. Indeed, the opinions of each side's experts can vary substantially, and continued litigation poses the risks that the Individual Defendants would prevail in a "battle of experts." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001). Such a battle would increase the expense – as well as the risk – involved with advancing the litigation toward a positive resolution for Plaintiffs and the Class, and a jury might credit the Individual

- 21 -

Defendants' experts and accordingly reject Plaintiffs' claims. *See PAR Pharm.*, 2013 WL 3930091, at *6 (noting "the inherent unpredictability and risk associated with damage assessments in the securities fraud class-action context").

The Settlement is a particularly strong result for the Class when balanced against those risks. The $46 million recovery exceeds the average settlement value of $34 million in class action securities cases in 2023 when excluding settlements over $1 billion, and far exceeds the median settlement value of $14.4 million in 2023. Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 H1 Updated* at 15-16, figs. 13-14 (NERA Aug. 6, 2024).

Given the complexity of this Litigation and the risks and delay inherent in continued litigation, the $46 million Settlement is a very good result. Taking into account that the case has been litigated for almost five years, its anticipated length if it continued, and the significant amount of the recovery, the Settlement here falls well within the range of reasonableness in light of the attendant risks and uncertainties of continued litigation, and should be preliminarily approved. *See Girsh*, 521 F.2d at 157.

## C.    The Other Rule 23(e)(2) Factors Are Met

Rule 23(e)(2) enumerates three additional factors for the Court to consider in approving a settlement: (1) the effectiveness of the proposed method for distributing relief; (2) the terms of the proposed attorneys' fees; and (3) the existence of any

other "agreements."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (2018 Amendments).  These factors also weigh in favor of preliminary approval.

### 1. The Proposed Method for Distributing Relief Is Effective

As discussed below in §VII, the method of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) is effective and more than sufficient. The notice plan includes: (1) direct mail notice to all those who can be identified with reasonable effort; (2) direct e-mail notification to hundreds of financial institutions that regularly monitor proposed securities class actions; and (3) publication of the Summary Notice in *The Wall Street Journal* and an online newswire service.  In addition, a case-specific website will be established where relevant deadlines and key Settlement documents, including the Stipulation, Notice, Proof of Claim, Preliminary Approval Order, and briefs and declarations in support of approval of the Settlement and counsel's fee application will be prominently posted.  Proofs of Claim may be submitted online through the website.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Plaintiffs' damages expert.  Calculations were based primarily on the damages

- 23 -

expert's analysis estimating the amount of artificial inflation in the prices of Mallinckrodt common stock during the Class Period.  A thorough claim-review process, including how deficiencies will be addressed, is also explained in the Stipulation.  Capeci Decl., Ex. 1, ¶¶5.6-5.8.

### 2. Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c)(iii).  The Settlement provides that Lead Counsel will apply to this Court for an award of attorneys' fees and expenses no later than 35 days prior to the Settlement Hearing.  *See* Capeci Decl., Ex. 1, Ex. A, ¶20.  As set forth in the proposed Notice, Lead Counsel will request attorneys' fees not to exceed one-third of the Settlement Amount and litigation expenses not to exceed $1.5 million, plus interest earned on both amounts.

This fee request is consistent with attorneys' fees regularly approved in connection with complex class action settlements within this Circuit.  *See, e.g.*, *In re Eros Int'l PLC Sec. Litig.*, 2023 WL 8519091, at *1 (D.N.J. Nov. 28, 2023) (awarding 33-1/3% of $25 million settlement, including interest); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024) (awarding 32% of $385 million settlement, including interest); *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, ECF 253, ¶4 (W.D. Pa. Aug. 9, 2023) (awarding 33-1/3% of $74 million settlement, including interest);

*Beltran v. SOS Ltd.*, 2023 WL 319895, at *8 (E.D. Pa. Jan. 3, 2023) (Pascal, M.J.) (awarding one-third of settlement fund, including interest, as "within the typical range and . . . reasonable"), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("'Courts within the Third Circuit often award fees of 25% to 33% of the recovery.'").

Lead Counsel's notice of its maximum expense request of $1.5 million is based on the expenses that counsel incurred over four years of litigation, including consultants and experts, document management expenses, and attorneys' fees for counsel who assisted Lead Counsel in Mallinckrodt's two Chapter 11 bankruptcy proceedings, and allows for any additional expenses incurred before final approval. In addition, Plaintiffs will each seek awards not to exceed $10,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

### 3. The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. The Settling Parties have entered into a confidential supplemental agreement that provides that the Individual Defendants will collectively have the right to terminate the Settlement in the event

that timely and valid requests for exclusion from the Class exceed the criteria set forth in the Supplemental Agreement.  *See* Capeci Decl., Ex. 1, ¶7.3.[5]

### 4.    Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), concerns whether the Settlement treats Class Members equitably.  As discussed above, all Class Members are treated equitably under the terms of the Stipulation, which provides that each Class Member that properly submits a valid Proof of Claim and whose claim calculates to a recovery of $10.00 or more will receive a *pro rata* share of the Net Settlement Fund, calculated under the Plan of Allocation.

The Settlement satisfies each factor identified under Rule 23(e)(2) and in *Girsh*.  Moreover, pursuant to *Warfarin*, 391 F.3d at 535, the Settlement is entitled to a presumption of fairness.  Given the risks involved in continuing to litigate, and the complexity of the underlying issues, the $46 million recovery is a very good result.    Therefore, Plaintiffs and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, preliminary approval should be granted, and notice of the Settlement should be provided to the Class.

---

[5]    As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements.  In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## VI.   CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In preliminarily approving the proposed settlement, this Court should preliminarily determine that class treatment is appropriate.[6]   *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).   The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for final approval.   *In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 586 (3d Cir. 2014).   "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement."   *Id.*

### 1.   The Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

---

[6]   The Third Circuit has found securities class actions to be particularly appropriate for resolving claims under the securities laws, "'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'"   *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 200 (E.D. Pa. 2008) (quoting *Yang v. Odom*, 392 F.3d 97, 109 (3d Cir. 2004), *abrogated by China Agritech v. Resh*, 584 U.S. 732 (2018)), *aff'd*, 639 F.3d 623 (3d Cir. 2011).

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  In addition, an action may be maintained as a class action if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This Litigation meets these requirements.

**Numerosity:** Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Although the exact number of Class Members is not known, courts generally presume that the numerosity requirement has been satisfied "'when a class action involves a nationally traded security.'"  *In re Cigna Corp Sec. Litig.*, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006).  Here, numerosity is satisfied as Mallinckrodt's common stock was listed on the NYSE during the Class Period, with millions of shares of common stock outstanding.  ECF 56, ¶30.

**Commonality:** Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality does not mean that all class members must make identical claims and arguments, but only that "named

plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Kress v. Fulton Bank, N.A.*, 2021 WL 9031639, at *5 (D.N.J. Sept. 17, 2021) (same). The common issue "'must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Securities fraud cases easily meet the commonality requirement, which is satisfied where class members have been injured by similar material misrepresentations or omissions, as is alleged here. *DVI*, 249 F.R.D. at 201 (Third Circuit courts "'have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made a misrepresentation that inflated the price of its stock.'").

**Typicality:** Rule 23(a)(3) requires that the representative's claim be typical of those of the members of the class. If "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). "'Factual differences will not render a claim atypical if the claim arises from the same event or practice or

course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.'" *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992). Here, Plaintiffs' claims are similar to those of the other members of the Class, all of whom purchased Mallinckrodt common stock at prices that were artificially inflated by the Individual Defendants' allegedly false and misleading statements and were harmed when the alleged truth emerged. Plaintiffs' claims stand or fall with those of the Class, and thus, they are typical.

**<u>Adequacy</u>:** Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This requirement has traditionally entailed a two-pronged inquiry: *first*, the named plaintiffs' interests must be sufficiently aligned with the interests of the absentees; *second*, the plaintiffs' counsel must be qualified to represent the class. *Osgood v. Harrah's Ent., Inc.*, 202 F.R.D. 115, 126 (D.N.J. 2001). A named plaintiff is "adequate" if his interests do not conflict with those of the class. As explained herein, Plaintiffs and Lead Counsel are adequate representatives. Plaintiffs and Class Members purchased Mallinckrodt common stock during the Class Period, and alleged they were injured by the Individual Defendants' alleged materially false and misleading statements and omissions. If Plaintiffs prove their claims at trial, they would also prove the Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Plaintiffs have demonstrated their commitment to this Litigation by retaining

4862-1609-2631.v1

qualified counsel. *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001). They have also diligently monitored the Litigation and communicated with counsel throughout the proceedings. *See Doherty v. Hertz Corp.*, 2014 WL 2916494, at *4 (D.N.J. June 25, 2014).

### 2.    The Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Class satisfies these requirements. "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007) (citing cases). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, §1788 at 528 (1986). Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 141 (D.N.J. 2002) ("The requirement that common questions of law or fact predominate over individual issues does not mean that the existence of individual issues defeats certification . . . ."), *aff'd*, 84 F. App'x 257 (3d Cir. 2004). Here, the existence of common questions and their

predominance over individual issues are exemplified by the fact that if every Class Member brought an individual action, each would be required to demonstrate the same omissions or misrepresentations to prove liability. Thus, this Litigation is an example of the principle that the predominance requirement is "readily met" in many securities class actions. *Amchem*, 521 U.S. at 625.

Rule 23(b)(3) also requires that a class action would be a superior method of adjudicating Plaintiffs' and the Class Members' claims. Superiority "is easily satisfied in securities fraud cases where 'there are many individual plaintiffs who suffer damages too small to justify a suit against a large corporate defendant.'" *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *8 (D. Del. June 6, 2013). Courts have recognized that "[a] class action is certainly the superior method for adjudicating" securities fraud claims because "[g]enerally, 'as a practical matter, investors defrauded by securities law violations have no recourse other than class relief.'" *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 78 (D.N.J. 2019).[7]

---

[7]    Manageability is not an element relevant to the certification of a settlement class. *See Amchem*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").

### 3. Lead Counsel Should Be Appointed Counsel for the Class

Rule 23(g) requires the Court to assess the adequacy of proposed class counsel. The Court must consider the following: (1) the work Lead Counsel has done in identifying or investigating potential claims in the Litigation; (2) Lead Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the Litigation; (3) Lead Counsel's knowledge of the applicable law; and (4) the resources counsel committed to representing the Class. *Nafar v. Hollywood Tanning Sys., Inc.*, 2008 WL 3821776, at *7 (D.N.J. Aug. 12, 2008). As detailed herein, Lead Counsel is highly experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country (*see* www.rgrdlaw.com). Lead Counsel expended considerable time and effort in pursuing the claims in this Litigation over a four year period. Given Lead Counsel's extensive securities class action experience, they are knowledgeable and capable of evaluating cases to determine the appropriate settlement value and at what stage of the litigation a settlement should be pursued. Thus, Lead Counsel is more than adequate to serve as settlement class counsel.

## VII.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

### A.    Retention of Verita Global as Claims Administrator

Verita Global is an experienced administrator for class action settlements, and has implemented many successful claims administration programs. www.veritaglobal.com.  Plaintiffs request that the Court appoint Verita Global as Claims Administrator to provide all notices approved by the Court to Class Members, to process Proofs of Claim, and to administer the Settlement.

### B.    Proposed Notice Procedures

Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.  The Rule provides that a class action shall not be settled, dismissed, or compromised without the approval of the court, and notice of the proposed settlement, dismissal, or compromise shall be given to all members of the class in such a manner as the court directs.  Fed. R. Civ. P. 23(e).  The Rule provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  In addition, Rule 23(c)(2)(B) requires a certified class receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

Here, the Settling Parties have negotiated the form of the notices to be disseminated to all identified potential Class Members.  The proposed Notice,

Summary Notice, and Postcard Notice are attached to the proposed Preliminary Approval Order as Exhibits 1, 3 and 4, respectively.

The proposed Notice apprises Class Members of (among other things) the nature of the Litigation, the definition of the Class, the claims and issues in the Litigation, and the claims that will be released in the Settlement.  The Notice also: (1) advises that a Class Member may enter an appearance through counsel if desired; (2) describes the binding effect of a judgment on Class Members under Rule 23(e)(3); (3) states the procedures and deadline for Class Members to opt out of the Class or to object to the proposed Settlement, the proposed Plan of Allocation, and the requested attorneys' fees and expenses; (4) states the procedures and deadline for Class Members to submit a Proof of Claim to recover from the Settlement; and (5) provides the date, time, and location of the Settlement Hearing.  The Settling Parties further propose to supplement the Notice with the Summary Notice, to be published once in the national edition of *The Wall Street Journal* and once over a national online newswire service.

The Notice also satisfies the PSLRA's specific notice requirements by, *inter alia*, stating: (1) the amount of the Settlement determined in the aggregate and on an average per-share basis; (2) that the Setting Parties do not agree on the average amount of damages per share that would be recoverable in the event Plaintiffs prevailed at trial, and stating the issue(s) on which the Settling Parties disagree;

- 35 -

(3) that Lead Counsel intends to make an application for an award of attorneys' fees and expenses, including the amount of the requested fees and expenses determined on an average per-share basis; (4) contact information for Lead Counsel; and (5) the reasons the Settling Parties are proposing the Settlement.

The proposed plan for providing notice satisfies due process. As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail the Postcard Notice (Exhibit 4 to the Preliminary Approval Order) to all Class Members who can be identified with reasonable effort, including through Mallinckrodt's transfer records. The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. After entry of the Preliminary Approval Order, the Stipulation and exhibits, the Preliminary Approval Order, and the Notice and Proof of Claim form will be posted on the Settlement-designated website. Additionally, the Summary Notice will be published in *The Wall Street Journal* and transmitted over a national newswire service. Courts routinely find that comparable notice programs represent the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D.

- 36 -

171, 182 n.3 (S.D.N.Y. 2014); *see also Jones*, 2007 WL 2085357, at *5 ("[T]he proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members."). For all of the foregoing reasons, the notice program should be approved by the Court.

## VIII.  PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Settlement Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to Rule 23(e)(2).  *See Manual for Complex Litigation*, §21.63.

Concurrent with this motion, Plaintiffs have submitted a proposed agreed-upon Preliminary Approval Order, which was negotiated with the Individual Defendants, setting forth the proposed schedule of Settlement-related events through final approval.  Specifically, Plaintiffs propose the following schedule:

| | |
|---|---|
| Date for commencing the mailing of the Postcard Notice to the Class, and posting of the Notice and Proof of Claim on the Settlement website (the "Notice Date") | 21 calendar days after the Preliminary Approval Order is signed and entered |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |

| Deadline for filing objections and submitting requests for exclusion | 21 calendar days prior to the Settlement Hearing |
|---|---|
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Deadline for Lead Counsel to serve on Individual Defendants' Counsel proof, by affidavit or declaration, of mailing and publishing | 7 calendar days prior to the Settlement Hearing |
| Deadline for Class Members to submit Proofs of Claim | 90 calendar days after the Notice Date |
| Settlement Hearing | At least 100 calendar days after the Preliminary Approval Order is signed and entered, at the Court's convenience |

This proposed schedule complies with Rule 23 and due process, and will allow Class Members to recover from the Settlement in a timely fashion.

## IX.    CONCLUSION

Plaintiffs have obtained a very good result for the Class under the circumstances of this Litigation, and now respectfully request that the Court grant their motion for preliminary approval and enter the Settling Parties' proposed Preliminary Approval Order.

DATED:  September 18, 2024          Respectfully submitted,

CARELLA, BYRNE, CECCHI,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
KEVIN G. COOPER

/s/James E. Cecchi
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Local Counsel for Plaintiffs*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MICHAEL G. CAPECI
AVITAL O. MALINA
NATALIE C. BONO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mcapeci@rgrdlaw.com
amalina@carellabyrne.com
nbono@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Lead Counsel for Plaintiffs*

- 39 -

LORIUM LAW PLLC
RONALD J. COHEN
RICHELLE B. LEVY
101 NE 3rd Avenue, Suite
1800 Fort Lauderdale, FL 33301
Telephone: 954/462-8000
rcohen@loriumlaw.com
rlevy@loriumlaw.com

*Additional Counsel for Named Plaintiff Sunrise*

- 40 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on September 13, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ James E. Cecchi
JAMES E. CECCHI

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
KEVIN G. COOPER
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Email:  jcecchi@carellabyrne.com

4862-1609-2631.v1