# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
PATRICIA A. SHENK, *et al.*,                    :
                                                :
            Plaintiffs,                     :      NO. 1:17-CV-00145-DLF
                                                :
    v.                                         :
                                                :
MALLINCKRODT PLC, *et al.*,                     :
                                                :
            Defendants.                     :


**STATEMENT OF POINTS AND AUTHORITIES OF LEAD PLAINTIFF STATE
TEACHERS RETIREMENT SYSTEM OF OHIO IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF PROPOSED CLASS ACTION
<u>SETTLEMENT AND PLAN OF ALLOCATION</u>**

**LOWENSTEIN SANDLER LLP**
Zarema A. Jaramillo
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 753-3830
zjaramillo@lowenstein.com

**BARRACK, RODOS & BACINE**
Leonard Barrack
Jeffrey W. Golan (pro hac vice)
Jeffrey B. Gittleman (pro hac vice)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
lbarrack@barrack.com
jgolan@barrack.com
jgittleman@barrack.com

*Attorneys for Lead Plaintiff, State
Teachers Retirement System of Ohio
and Lead Counsel for the Class*

**MURRAY MURPHY MOUL + BASIL
LLP**
Brian K. Murphy (pro hac vice)
Joseph F. Murray
Geoffrey J. Moul
1114 Dublin Rd.
Columbus, OH 43215
Telephone: (614) 488-0400
Facsimile: (614) 488-0401
murphy@mmmb.com
murray@mmmb.com
moul@mmmb.com

*Special Counsel for State Teachers
Retirement System of Ohio*

# TABLE OF CONTENTS

**Page(s)**

I.  PRELIMINARY STATEMENT ................................................................... 1

II. HISTORY OF PROCEEDINGS ................................................................. 2

    A.    Background Facts Concerning the Litigation and Mediation ................................. 2

    B.    The Parties' Positions on the Settlement ........................................................... 10

    C.    Proceedings Since Entry of the Preliminary Approval Order ............................. 11

ARGUMENT ......................................................................................................... 12

I.  FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED ................... 12

    A.    The Standard for Approval of a Class Action Settlement ................................... 12

    B.    The Settlement Is Fair ...................................................................................... 13

        1.    The Settlement Is the Result of Arm's Length Negotiations Conducted by Judge Phillips ....................................................................... 13

        2.    The $65.75 Million Settlement Amount Is Fair Especially Given Mallinckrodt's Bankruptcy ...................................................................... 16

        3.    The Reaction of the Settlement Class to the Settlement ........................... 18

        4.    The Opinion of Experienced Counsel ...................................................... 19

II. THE NOTICE OF SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE ................................................................. 20

III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE .......... 21

IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ........................................................................... 23

    A.    The Class Satisfies the Requirements of Rule 23 ............................................. 24

    B.    Lead Counsel Should be Appointed Class Counsel .......................................... 30

CONCLUSION ....................................................................................................... 31

i

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Amchem Products v. Windsor*,
   521 U.S. 591 (1997) ..................................................... 24, 29

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
   568 U.S. 455 (2013) ..................................................... 24, 28

*Bunn v. D.C.*,
   306 F.R.D. 68 (D.D.C. 2015) ....................................... 24, 25, 26, 29

*Bynum v. District of Columbia*,
   214 F.R.D. 27 (D.D.C. 2003) ........................................ 26

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .......................................... 24

*DL v. D.C.*,
   713 F.3d 120 (D.C. Cir. 2013) ....................................... 24

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................... 15

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................... 20

*Freeport Partners, L.L.C. v. Allbritton*,
   2006 WL 627140 (D.D.C. Mar. 13, 2006) ................... 26, 28

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) .................................................... 28

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ......................... 21

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ............................. 15

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*,
   247 F.R.D. 32 (D.D.C. 2008) ...................................... 29

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
   4 F. Supp. 3d 94 (D.D.C. 2013) ............................... *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............... 16

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ..................... 16

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ......................... 24

*In re Lorazepam & Clorazepate Antitrust Litig.*,
202 F.R.D. 12 (D.D.C. 2001) ......................... 26

*In re Lorazepam & Clorazepate Antitrust Litig.*,
2003 WL 22037741 (D.D.C. 2003) .................... 19

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ...................... 16

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................ 21

*In re Nasdaq Litig.*,
1999 WL 395407 (S.D.N.Y. June 15, 1999) .................. 20

*In re Nasdaq Litig.*,
2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ................... 21

*In re Nasdaq Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...................... 19

*In re Newbridge Networks Sec. Litig.*,
926 F. Supp. 1163 (D.D.C. 1996) ...................... 26

*In re Pfizer Inc. Secs. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ....................... 30

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*,
148 F.3d 283 (3d Cir. 1998) ......................... 17

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ...................... 16

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................... 15

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002) ........................ 28

*In re Vitamins Antitrust Litig.*,
305 F.Supp.2d 100 (D.D.C. 2004) ................... 13, 18

*Kinard v. E. Capitol Family Rental, L.P.*,
331 F.R.D. 206 (D.D.C. 2019) ....................... 13

iii

*Maley v. Del Glob. Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................. 21

*Meijer, Inc. v. Warner Chilcott Holdings Co III, Ltd.*,
   246 F.R.D. 293 (D.D.C. 2007) ............................................................... 25, 27

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .............................................................................. 29

*Richardson v. L'Oréal USA, Inc.*,
   991 F. Supp. 2d 181 (D.D.C. 2013) ............................................................. 25

*Shenk v. Mallinckrodt plc*,
   2019 WL 3491485 (D.D.C. July 30, 2019) ..................................................... 4, 5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................... 18

*Trombley v. Nat'l City Bank*,
   826 F.Supp.2d 179 (D.D.C. 2011) .............................................................. 12

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8*,
   283 F.R.D. 199 (S.D.N.Y. 2012) ................................................................ 26

*Vista Healthplan v. Warner Holdings Co, III LTD*,
   246 F.R.D. 349 (D.D.C. 2007) ................................................................... 19

*Walmart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d. 96 (2d Cir. 2015) ..................................................................... 20

## **Statutes**

11 U.S.C. §§ 101-1532 ................................................................................ 5

15 U.S.C. §§ 78j ....................................................................................... 2

## **Rules**

Rule 23 ........................................................................................... *passim*

Lead Plaintiff, the State Teachers Retirement System of Ohio ("Lead Plaintiff" or "Ohio STRS"), on behalf of itself and the proposed Settlement Class,[1] respectfully submits this memorandum of law in support of its motion for final approval of the proposed class action settlement with Defendants Mallinckrodt plc ("Mallinckrodt"), Mark C. Trudeau, Mallinckrodt's CEO, and Matthew K. Harbaugh, Mallinckrodt's former CFO (collectively "Defendants"), and for final approval of Lead Plaintiff's proposed Plan of Allocation for distribution of the Net Settlement Fund to Class members who submit timely and valid proof of claim forms.

## I.    PRELIMINARY STATEMENT

Five years after this lawsuit was originally filed, the Parties have agreed to a Settlement of all claims against Defendants in exchange for the payment of $65,750,000, which has been deposited into an interest-bearing escrow account.  The Settlement was successfully mediated before the Honorable Layn Phillips (Ret.), one of the foremost mediators in securities class actions, who was furnished with extensive pre-mediation submissions by the Parties and assisted the Parties to reach the proposed Settlement over a period of two months, despite the fact that Mallinckrodt was in bankruptcy proceedings at that time and this Action had been stayed as a result.  Lead Plaintiff respectfully submits that: (a) the proposed Settlement represents an excellent result for the Settlement Class, satisfies the standards for final approval of a settlement under Rule 23 of the Federal Rules of Civil Procedure, and should be granted final approval; and (b) the Plan of Allocation is fair and reasonable and should also be approved.

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in Paragraph 1 of the Stipulation and Agreement of Settlement (the "Stipulation"), dated May 18, 2021, as amended July 22, 2021.

## II. HISTORY OF PROCEEDINGS

### A. Background Facts Concerning the Litigation and Mediation

Beginning on January 23, 2017, a series of proposed class actions alleging violations of the federal securities laws by some or all of the Defendants were filed in this Court: *Shenk, et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 145; *Patel, et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 171; *Schwartz, et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 447; *Fulton County Employees' Ret. Sys., et al. v. Mallinckrodt plc, et al.*, Case No. 17 Civ. 534. ¶ 4.[2]

Multiple plaintiffs and other investors in Mallinckrodt common stock moved for consolidation and appointment as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. §§ 78j and 78t, as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 78u-4, *et seq*.) ("PSLRA"). ¶¶ 5-7. Following extensive submissions and a March 1, 2018 oral argument, the Court entered an order on March 9, 2018, approving Ohio STRS's motion for consolidation of the cases, appointment of Ohio STRS as Lead Plaintiff for the consolidated action ("Action"), and approval of Barrack, Rodos & Bacine as Lead Counsel and Murray Murphy Moul & Basil LLP as Special Counsel to Ohio STRS. ECF No. 45.

On May 18, 2018, Lead Plaintiff filed a 109-page, 240-paragraph Consolidated Class Action Complaint ("Complaint") that alleged that the Defendants (and Hugh O'Neill, who was

---

[2] All references to ¶ __ are to the Declaration of Jeffrey W. Golan in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Golan Decl."), being filed concurrently herewith. The Golan Decl. provides a detailed description of the history of this litigation, the claims asserted, the investigation and discovery undertaken, the negotiation process, the substance of the Settlement and the Plan of Allocation, and the substantial risks in litigating the claims asserted against the Defendants. Many of the facts identified in the history of the litigation, which are included in the Golan Decl. ¶¶ 4-40, were also agreed to by the Parties for inclusion in the Notice to be disseminated to potential Settlement Class members that the Court approved in the Preliminary Approval Order entered April 7, 2022 (ECF No. 103).

subsequently dismissed without prejudice by agreement) violated Sections 10(b) and 20(a) of the Exchange Act. The Complaint asserted claims on behalf of all persons or entities, other than Defendants and their affiliates, who purchased Mallinckrodt common stock from July 14, 2014 through November 6, 2017, and suffered damages as a result. ECF No. 51.

This case primarily concerns Defendants' alleged misrepresentations and omissions concerning the Company's key drug, Acthar® Gel ("Acthar"). The Complaint alleged that throughout the Class Period, Defendants made false and misleading statements and failed to disclose material adverse facts about the exposure of Acthar to Medicare and Medicaid payments, a pending investigation of the FTC, and the long-term sustainability of the Company's revenues from Acthar. Comp. ¶¶ 116-126, 127-151, 152-170.[3] In the Complaint, Lead Plaintiff asserted claims grounded in fraud based on alleged materially false and misleading statements made with scienter against the Company and the Individual Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act.

On July 17, 2018, Defendants moved to dismiss the Complaint. On August 30, 2018, Lead Plaintiff filed its 67-page opposition brief that responded to the dismissal motions filed by the Company and by the Individual Defendants. ECF No. 64. On October 1, 2018, Defendants filed their reply papers, and on November 19, 2018, the Court held a lengthy oral argument on Defendants' motions to dismiss. Defendants thereafter filed a notice of supplemental authority to which Lead Plaintiff responded on December 3, 2018. ECF No. 71.

---

[3] References to allegations in the Complaint (ECF No. 51) appear as "Comp. ¶ __." While the Complaint alleged many additional facts and analyses relating to the claims that had been asserted in the initial complaints filed prior to Lead Plaintiff's appointment, the Complaint reflected the very significant additional research that Lead Counsel undertook and asserted a new set of claims based on statements the Defendants made from mid-January through August 2017 concerning the long-term sustainability of the Company's revenues from Acthar. ¶¶ 8-13.

On July 30, 2019, the Court issued a Memorandum Opinion and Order denying Defendants' motions to dismiss in part and granting them in part, which was reported as *Shenk v. Mallinckrodt plc*, 2019 WL 3491485 (D.D.C. July 30, 2019) ("Memorandum Opinion and Order"). ECF No. 75. In the Memorandum Opinion and Order, the Court dismissed the claims based on alleged misstatements before October 6, 2015, and one claim based on an alleged misrepresentation made on May 19, 2017, and denied the motions to dismiss for the remainder of the claims.

The Court sustained claims regarding the following alleged misstatements: (1) an October 6, 2015 statement by the Company's CEO, Defendant Mark Trudeau, concerning the portion of Acthar sales attributable to Medicare and Medicaid; (2) a statement in the Company's Form 10-K issued on November 29, 2016 relating to a Federal Trade Commission investigation; and (3) a series of statements in 2017 concerning Acthar sales and prospects, including financial and Acthar-related guidance to the market and insurer acceptance of Acthar claims. *See Shenk*, 2019 WL 3491485 at *11-13, *16-20, *23-26. The Court further sustained the Complaint's claim that when the alleged corrective disclosures were made, the price of Mallinckrodt's stock fell, which is the basis of the damages that were asserted on behalf of the putative Class. *Id.* at *6. The impact of the Memorandum Opinion and Order was to limit the time period of Lead Plaintiff's claims to a period from October 6, 2015 through November 6, 2017, inclusive (the "Class Period"). ¶ 20.

On September 23, 2019, Defendants filed their respective answers to the Complaint. Defendants denied the claims and asserted a number of affirmative defenses. ECF Nos. 78 & 79. Fact discovery in the Action commenced in September 2019. As part of this fact discovery, the Parties engaged in extensive meet and confers on the document requests served in the case, and

eventually produced and exchanged over 250,000 pages of documents prior to the mediation process described below.  ¶ 23.

On July 29, 2020, Lead Plaintiff moved to certify a class of investors consisting of all persons or entities, other than Defendants and their affiliates, who purchased or otherwise acquired Mallinckrodt common stock during the Class Period.  ECF No. 94.  Lead Plaintiff sought to have Ohio STRS and the Teamsters Local 677 Health Service and Insurance Plan ("Local 677"), which had also purchased Mallinckrodt common stock during the Class Period, certified as representatives of the Class.  In support of the motion for class certification, Lead Plaintiff submitted a 34-page memorandum of law, and a declaration of counsel that provided factual support and exhibits, including a 48-page expert report of Michael L. Hartzmark, Ph.D. ("Dr. Hartzmark") that itself had nearly 300 pages of exhibits.  *Id.*

Following discussions in July and August 2020, Lead Plaintiff and Defendants agreed to pursue mediation ("Mediation") to explore reaching a global resolution of the Action before the Honorable Layn Phillips (Ret.), a former federal district court judge in the United States District Court for the Western District of Oklahoma (the "Mediator").  ¶ 27.  On September 1, 2020, the Court entered a stay of the Action pending a conclusion of the Mediation based on a joint motion of the Parties.  ECF No. 95 and Minute Order.  Counsel for Lead Plaintiff and Defendants began to establish a framework for the Mediation.

On October 12, 2020, Mallinckrodt filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings in the Action ("Notice of Bankruptcy") stating that it and its affiliated debtors had commenced on the same date bankruptcy cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* ("Bankruptcy Code") in the United States Bankruptcy Court in the District of Delaware ("Bankruptcy Court"), jointly

administered for procedural purposes only under the caption, *In re Mallinckrodt plc*, Case No. 20-12522 ("Bankruptcy Action"). ECF No. 96. Through the Notice of Bankruptcy, Mallinckrodt informed the Court that this Action was automatically stayed with regard to Mallinckrodt pursuant to Section 362(a) of the Bankruptcy Code. This Court then entered a Minute Order on October 13, 2020, staying the Action against all Defendants. Lead Plaintiff's motion for class certification remained on the case docket, but neither the Parties nor the Court undertook any further proceedings on the motion.

Upon the filing of the Notice of Bankruptcy, Lead Counsel retained counsel, Michael Etkin, a partner at Lowenstein Sandler LLP, to assist in the representation of Ohio STRS and the putative Class in the Bankruptcy Action.[4] To resolve an adversary proceeding filed by the Debtors to enjoin a number of lawsuits, including this action, on November 15, 2020, the Debtors and Lead Plaintiff filed a stipulation in the Bankruptcy Action requesting that the Bankruptcy Court modify the automatic stay and the additional requested stay regarding the Individual Defendants solely to allow the Parties to participate in the Mediation. On November 16, 2020, the Bankruptcy Court entered an Order approving that stipulation. ¶ 29.

In advance of the Mediation, the Parties – through their counsel – exchanged additional documents, and prepared and exchanged written submissions to the Mediator in an effort to inform the Mediator of the evidence, claims and defenses of the Parties, and the relative positions of the Parties on key issues in the case. ¶ 30. The Parties and their counsel conducted two rounds of simultaneous submissions as part of the Mediation, submitting and exchanging

---

[4] ¶ 29; *see also* Declaration of Michael S. Etkin in in Support of Final Approval of Class Action Settlement, Plan of Allocation, Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement of Expenses of Lead Plaintiff ("Etkin Decl."), attached as Exhibit 3 to Golan Declaration, at ¶2. Zarema A. Jaramillo, a partner in the Lowenstein Sandler LLP's Washington, D.C. office, entered her appearance on behalf of STRS Ohio on May 3, 2022 (ECF No. 105) and will serve as local counsel in this Action going forward.

opening statements on November 11, 2020 (which collectively appended over 150 exhibits) and responding submissions on November 25, 2020 (which collectively appended an additional 31 exhibits). *Id.*

The Mediation was conducted remotely by Zoom over two separate sessions. ¶ 31. The Parties and their counsel, and relevant Directors and Officers ("D&O") Insurers and their counsel, attended both sessions in full. *Id.*; *see also* Declaration of Stacey Wideman in Support of Final Approval of Class Action Settlement, Plan of Allocation, Award of Attorneys' Fees and Reimbursement of Expenses, and Reimbursement of Expenses of Lead Plaintiff ("Wideman Decl."), attached as Exhibit 1 to Golan Decl., at ¶ 6. Counsel for Local 677 also participated during certain parts of the Mediation. The first Mediation session was held on December 7, 2020 from 9:00 a.m. to 7:00 p.m., Eastern Time; the session did not end in an agreement to settle the Action. The second Mediation session was scheduled for January 12, 2021. And between these two dates, the Parties and the D&O Insurers engaged in numerous additional discussions with the Mediator in an attempt to narrow the gap between them in advance of the second Mediation session. ¶¶ 31-32.

On January 12, 2021, during the second Mediation session, which lasted from 9:00 a.m. to 5:30 p.m., Eastern Time, the Mediator continued to engage with the Parties and D&O Insurers. ¶ 32. At the end of that day, the Parties conditionally agreed to settle this Action for a cash payment of $65,750,000 for the benefit of the Class contingent on approval by the board of directors of Mallinckrodt and Lead Plaintiff's board (which approvals were obtained shortly thereafter) and an order of the Bankruptcy Court authorizing Mallinckrodt to enter into the Settlement (which authorization has been recently obtained, as discussed below). *Id.*

Prior to agreeing to the Settlement, Lead Plaintiff and Lead Counsel had conducted an in-depth investigation of the claims, defenses and underlying events relating to the Action. This investigation included, among other things, review and analysis of: (i) publicly available information concerning the Defendants, including newspaper articles, online publications, analyst reports, and commentary; (ii) regulatory filings made by Defendants with the SEC; (iii) materials on public websites of the U.S. Food and Drug Administration ("FDA"), Centers for Medicare and Medicaid Services ("CMS") and Federal Trade Commission ("FTC"); (iv) securities analysts' reports, public statements, media reports, and court records; and (v) over 250,000 pages of documents secured through discovery and the mediation process. ¶ 45. Lead Counsel also identified, retained and worked with an expert in the field of economics; met and conferred with Defendants' counsel; and participated (along with Lead Plaintiff representatives) in the Mediation process, which further brought into focus the strengths and weaknesses of the liability, loss causation and damages aspects of the case, as well as the limits of the potential sources of payment for any recovery in the case. ¶¶ 31, 46.

On January 13, 2021, counsel for Lead Plaintiff and counsel for Defendants, on behalf of their respective clients, entered into a term sheet (the "Term Sheet") setting forth, among other things, the agreement to settle and release all claims asserted in the Action against the Defendants in return for a cash payment by the D&O Insurers of $65,750,000 for the benefit of the Settlement Class, subject to certain terms and conditions, including the execution of a stipulation and agreement of settlement and related papers and approval by the Bankruptcy Court and this Court. ¶ 33.

The Parties' counsel thereafter undertook extensive discussions and drafting sessions to create and formalize the Settlement documents, including the (a) Stipulation and Agreement of

Settlement ("Stipulation"); (b) Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Hearing ("Notice"); (c) Proof of Claim and Release; (d) [Proposed] Final Judgment and Order of Dismissal with Prejudice ("Final Judgment"); (e) [Proposed] Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Proposed Preliminary Approval Order" or "Proposed Order"); and (g) Summary Notice of Class Action, Proposed Settlement, Motion for Attorneys' Fees and Expenses, and Settlement Hearing ("Summary Notice"). ¶ 34. The Settlement documents were executed as of May 18, 2021, and counsel for Mallinckrodt filed on that day a Motion with the Bankruptcy Court for Entry of an Order Approving Debtors' Entry into and Performance Under a Settlement Agreement Between the Shenk Plaintiffs and Shenk Defendants and Granting Related Relief ("Bankruptcy Court Motion"). *Id.*[5]

Given other significant matters pending in the Bankruptcy Court, including but not limited to the plan of reorganization confirmation process, involving an initial proposed plan of reorganization and amendments thereto, and a number of objections thereto, the Parties agreed that the Bankruptcy Court Motion would not be submitted for final consideration by the Bankruptcy Court until after that Court had ruled on confirmation of a plan of reorganization. ¶ 36. Thereafter, the Debtors and Lead Plaintiff filed their responses to objections and a reservation of rights that had been filed in response to the Bankruptcy Court Motion. *Id.*; *see also* Etkin Decl. ¶ 2.

---

[5] The Parties entered into an Amendment to the Stipulation on July 22, 2021, in response to a potential objection raised by counsel for plaintiffs in a different securities class action pending against Mallinckrodt, *Strougo v. Mallinckrodt plc.*, No. 3:20-cv-10100 (D.N.J.), after the Stipulation was filed with the Bankruptcy Court. The Amendment made clear that claims then being asserted in the *Strougo* case would not be released by operation of the Settlement in this Action, as claims in two other cases already named in the Stipulation were not being released. ¶ 35.

On February 3, 2022, the Bankruptcy Court issued an Opinion approving the Debtor's proposed plan of reorganization, with one ordered modification.  ¶ 37.  Thereafter, following a hearing on February 22, 2022, the Bankruptcy Court granted the Bankruptcy Court Motion on February 23, 2022, which authorized Mallinckrodt to enter into the Settlement and approved the use of D&O insurance proceeds to fund the Settlement payment on behalf of the Company and the Individual Defendants.  *Id.*; *see also* Etkin Decl. ¶2.

### B.  The Parties' Positions on the Settlement

Based upon their investigation, prosecution and mediation of the case, Lead Plaintiff and its counsel have concluded that the terms and conditions of the Stipulation, including the payment of $65,750,000 in settlement, constitute an outstanding achievement, especially considering Mallinckrodt's financial condition and the limitations imposed by the Company's bankruptcy proceedings, and that these terms are fair, adequate and reasonable to the members of the Class and in their best interests.  ¶¶ 43-48; Wideman Decl. ¶¶ 7-8.  Ohio STRS, through its internal representatives and counsel, as well as counsel with the Ohio Attorney General's office, provided direct oversight of the prosecution of this matter.  Based on the advice of its counsel and concurrence of Local 677 and its counsel, Lead Plaintiff agreed to settle the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering: (a) the financial benefit that the members of the Class will receive under the proposed Settlement; (b) the significant risks of continued litigation and trial, including in light of Mallinckrodt's bankruptcy; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.  *Id.*

Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S.

securities laws. Defendants have denied and continue to deny each and every one of the claims alleged in the Action on behalf of the proposed class, including all claims in the Complaint. Defendants also have denied, and continue to deny the allegations that Lead Plaintiff or Class Members have suffered damage or were otherwise harmed by the conduct alleged in the Action. ¶ 48. Rather, as stated in the Stipulation, Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Defendants have determined that it is desirable and beneficial to them that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

The proposed Settlement, if approved, provides an immediate, certain recovery for the claims asserted in this Action, without incurring the risks that (a) Defendants would succeed in defeating Lead Plaintiff's motion for class certification or would prevail, in whole or in part, at summary judgment, trial, or in subsequent appeals, and (b) the Class would recover nothing as a result of the bankruptcy proceeding. ¶¶ 44, 49-52. Lead Plaintiff, a sophisticated institutional investor with a significant financial stake in the outcome of the Action, has closely supervised and monitored both the prosecution and the settlement of the Action, including attendance at Court hearings and participation in the mediation sessions. ¶ 100; Wideman Decl. ¶¶ 3-6. Moreover, Lead Counsel, who are experienced in prosecuting securities class actions, believe that this Settlement is in the best interest of the Settlement Class.

### C. Proceedings Since Entry of the Preliminary Approval Order

By Court Order dated April 7, 2022, the Court granted preliminary approval of the Settlement. ECF No. 103 ("Preliminary Approval Order"). In accordance with the Preliminary Approval Order, the Court-authorized claims administrator, A.B. Data, Ltd. ("A.B. Data" or the "Claims Administrator"), began its notice campaign on April 27, 2022. A.B. Data and the

Barrack firm also opened webpages devoted to the proposed Settlement, placing key documents and other information on their web pages on April 27, 2022. In addition, the Summary Notice was published on May 2 and May 5, 2022, respectively, in the national edition of *Investor's Business Daily* and over the *PR Newswire*. ¶ 39.

Based on information received from the Claims Administrator, as of June 13, 2022, A.B. Data has disseminated over 190,000 copies of the Notice and Proof of Claim to potential Settlement Class Members. ¶ 82. As ordered by the Court and stated in the Notice, any objections to the Settlement, the Plan of Allocation or the request for attorneys' fees and reimbursement of litigation expenses must be submitted by June 28, 2022. To date, there have not been any objections submitted to the Court or provided to Lead Counsel, and no one has excluded themselves from the Class. ¶¶ 82-83.

In light of the relevant considerations detailed below and under the legal standards articulated hereafter, Lead Plaintiff respectfully submits that the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and should be approved by the Court.

## ARGUMENT

## I.     FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

### A.     The Standard for Approval of a Class Action Settlement

As a matter of public policy, courts strongly favor the settlement of lawsuits. *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 102 (D.D.C. 2013). This is particularly true in connection with complex class action litigation "'given the litigation expenses and judicial resources required in many such suits.'" *Id.* (citation omitted).

There is no single test in this Circuit for evaluating a proposed class action settlement under Rule 23(e). *Trombley v. Nat'l City Bank*, 826 F.Supp.2d 179, 194 (D.D.C. 2011). The

Court must consider the particular facts and circumstances of the case, but generally courts in this Circuit have considered the following factors in making this determination:

> (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of the plaintiffs' case; (3) the status of the litigation at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel.

*Kinard v. E. Capitol Family Rental, L.P.*, 331 F.R.D. 206, 212–13 (D.D.C. 2019).

Lead Plaintiff respectfully submits that the proposed Settlement is eminently fair, reasonable and adequate when measured under the foregoing criteria. The Settlement was reached only after capable counsel with extensive experience in complex securities litigation: (i) had fully explored the substantial risks associated with continued litigation of the Action and the strengths and weaknesses of their respective positions including the fact that Mallinckrodt had filed for bankruptcy protection coupled with the consequences of that filing; and (ii) had engaged in two months of arm's-length settlement negotiations with counsel for Defendants, overseen by Judge Phillips. The Settlement represents an excellent and immediate result for the Settlement Class and should be approved by this Court.

## B. The Settlement Is Fair

### 1. The Settlement Is the Result of Arm's Length Negotiations Conducted by Judge Phillips

The first factor to be considered by this Court – whether the Settlement was arrived at in a procedurally fair way through arm's length negotiations – is clearly demonstrated here and weighs heavily in favor of approval. A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F.Supp.2d 100, 104 (D.D.C. 2004) (quoting Manual for Complex Litigation (Third), § 30.42 (1995)).

Here, the Settlement was reached only after completion of: (1) Lead Plaintiff's initial factual investigation; (2) Lead Plaintiff's analysis of Mallinckrodt's public filings and public statements; (3) Lead Plaintiff's review of news articles and analyst reports concerning Mallinckrodt; (4) interviewing several confidential witnesses in connection with drafting the Complaint; (5) briefing and argument on Defendants' motions to dismiss; (6) the review and analysis of over 250,000 pages of documents produced in the litigation; (7) preparation and filing of Lead Plaintiff's motion for class certification; (8) consultations with experts on market efficiency, loss causation, damages and bankruptcy; (9) the exchange of pre-mediation submissions by the Parties and review and analysis of the additional productions of documents made in connection with the mediation; (10) multiple mediation sessions and intervening communications facilitated by Judge Phillips; and (11) extensive amendments in the Bankruptcy Action to protect the rights of Lead Plaintiff and the putative Class. ¶ 84. Thus, the Settlement was not achieved until the Parties had sufficient familiarity with the issues in the case to evaluate its merits – including the realities posed by Mallinckrodt's financial condition and bankruptcy proceedings – and agreed on a settlement figure that was acceptable to Defendants and fair, reasonable and adequate to the Class.

Despite Mallinckrodt's bankruptcy filing, Defendants agreed to mediation with Judge Phillips. Then, over the course of two full-day mediation sessions that occurred a month apart and with multiple intervening communications with Judge Phillips by the Parties, Lead Plaintiff convinced the Defendants' D&O insurers to pay over $65 million to settle the Class Members' claims, notwithstanding the pendency of other significant claims against the bankruptcy estate. *See, e.g.,* Wall St. Journal, *"Mallinckrodt Cleared to Leave Bankruptcy Under $1.7 Billion Opioid Deal"* (Feb. 3, 2022). By achieving the commitment to pay over $65 million to settle the

claims of the putative Class here, Lead Counsel had to secure the significant contribution of multiple layers of D&O coverage, while other securities cases claimants were stayed. Under these circumstances, this recovery is clearly impressive.

For his part, Judge Phillips has stated that this Settlement was the product of arm's length negotiations and that it is a fair result. He concluded, "The proposed Settlement is the result of vigorous arm's-length negotiation by all involved Parties," observing "I believe, based on my extensive discussions with the Parties and the information made available to me both before and during the Mediation, that the Settlement was negotiated in good faith and that the Settlement is fair and reasonable." ¶ 42; *see also* pp. 6 of 18 of the Notice. Judge Phillips' assessment, which is based upon his serving as the Mediator for the negotiations in this Action as well as his track record of successfully mediating hundreds of securities and other class actions (*see* http://www.phillipsadr.com/bios/layn-phillips/), constitutes a strong factor favoring approval. *See In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d at 103 (citing mediator's positive opinion of settlement as "weigh[ing] in favor of approval"); *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of retired Judge Phillips and referring to him as "one of the most prominent and highly skilled mediators of complex actions …"); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator in the settlement negotiations "strongly supports a finding that they were conducted at arm's-length and without collusion").

## 2. The $65.75 Million Settlement Amount Is Fair Especially Given Mallinckrodt's Bankruptcy

The second and third factors to be considered – the terms of the Settlement and the status of the litigation at the time of the Settlement – also weigh in favor of approval here. "[I]n evaluating the settlement of a securities class action, federal courts … 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). Because "[s]ecurities class actions are generally complex and expensive to prosecute," *In re Gilat Satellite Networks, Ltd.*, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007), such actions "readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

To our knowledge, the $65,750,000 proposed Settlement is the second largest settlement of a securities class action in this Circuit since the PSLRA went into effect in 1996.[6] Moreover, it was arrived after briefing voluminous motions to dismiss, after Lead Plaintiff filed its motion for class certification, after Lead Counsel had produced and/or reviewed more than 250,000 pages of discovery, including targeted document productions undertaken as part of the mediation process, and after Lead Counsel consulted extensively with experts as to possible damages. ¶¶ 13-32. As reflected by the more than 9,540 hours Plaintiffs' Counsel's (comprised of Lead Counsel, MMM+B, and Hach Rose Schirripa & Cheverie, PLLC) attorneys and paralegals spent litigating this case, the litigation effort has been significant. ¶ 80. While Defendants' motions to dismiss have already been decided and significant document discovery undertaken, including the

---

[6] The largest appears to be $153 million in *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d at 103. *See* https://clsbluesky.law.columbia.edu/2021/07/27/iss-discusses-the-largest-u-s-securities-class-action-settlements-by-state/.

production and review of documents as part of the mediation process, Lead Plaintiff's class certification motion remained pending at the time of the Settlement, no deposition testimony had yet been taken, the Parties had not undertaken formal expert discovery, and summary judgment motions had yet to be filed by the parties. The resolution of each of these issues would have required additional investments of time and expense on behalf of each of the Parties, and at each point there would still have been uncertainty that Plaintiff would prevail.

The complexity of the substantive issues in this Action also weighs in favor of approving the Settlement. Lead Plaintiff's 109-page, 240-paragraph Complaint alleged that Defendants violated the federal securities laws by making materially false and misleading statements concerning three distinct fact patterns. If the Action were to continue, Lead Plaintiff would face Defendants' multifaceted defenses concerning falsity, materiality and loss causation, on each of the three sets of claims asserted in the Action, some of which could have been raised in opposition to class certification. All of that would have required Lead Plaintiff to engage one or more additional experts, and incur the time and expense of additional expert discovery. ¶ 87.

Furthermore, absent the Settlement, there would have been significant additional necessary resources and costs expended to prosecute the claims against the Defendants. Trial on these issues would be both lengthy and costly, and would require expert testimony, further adding to the expense and duration of the Action. *See In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court"). Moreover, even if the Class were able to recover a judgment at trial, there is always additional delay caused by not only the trial, but by the inevitable appeals of any judgments. Thus, the Settlement provides a substantial immediate benefit for the Settlement

Class without the expense and delay of further litigation. As a result, this is an appropriate stage for settlement because the Parties have sufficient information and understanding of the strengths and weaknesses of their respective positions, and they have not expended unnecessary resources beyond those necessary to understand these positions. *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d at 105 ("Thus, the settlement certainly 'do[es] not come too early to be suspicious.' Nor does it come 'too late to be a waste of resources…'") (quoting *In re Vitamins*, 305 F.Supp.2d at 105).

Finally, Mallinckrodt's financial position and the impact of its bankruptcy filing – wherein it is only now about to emerge from bankruptcy – also stands out as a risk militating in favor of approving this Settlement. *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993) ("one factor predominates to make clear that the district court acted within its discretion. That factor is [defendant's] financial condition. At the time of the settlement it was involved in negotiations with its creditors to restructure its debt and had had an involuntary bankruptcy petition recently filed against it").[7]

### 3. The Reaction of the Settlement Class to the Settlement

The fourth consideration – the reaction of the Settlement Class to the Settlement – has been positive and also supports approval. The deadline for filing objections is June 28, 2022. As of the date of the present filing, no objections have been submitted to the Court or provided to Lead Counsel out of the more than 190,000 Notices sent to potential Settlement Class Members.

---

[7] Indeed, the claims resolved by this Settlement against Mallinckrodt, since they relate to claims in connection with the purchase of equity securities, are statutorily subordinated under Section 510(b) of the Bankruptcy Code and were therefore entitled to no recovery from the Debtors' estate since Mallinckrodt's pre-petition equity was wiped out. ¶ 88.

¶ 83.[8]  Lead Plaintiff respectfully submits that the positive reaction of the Settlement Class to date supports approval of the Settlement.  *See In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d at 106.

### 4.    The Opinion of Experienced Counsel

Finally, the opinion of experienced counsel "'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Vista Healthplan v. Warner Holdings Co, III LTD*, 246 F.R.D. 349, 363 (D.D.C. 2007) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *6 (D.D.C. 2003)). Lead Counsel, who (1) made the presentations during mediation sessions, (2) participated in other communications with the Mediator and Lead Plaintiff, and (3) negotiated the final Settlement on behalf of the Settlement Class, has extensive experience in successfully prosecuting some of the largest and most complex securities class actions in history.  *See* Golan Decl., Exhibit 2A.  Lead Counsel, with the benefit of extensive discovery, is therefore in a position to assess the strengths and weaknesses of the claims and defenses, and to recommend that the Court approve the Settlement.  *Id.*  Such a recommendation should be accorded "great weight."  *See In re Nasdaq Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("'Great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

The facts recited above demonstrate that the proposed Settlement was the product of serious, informed and non-collusive negotiations, provides no preferential treatment to the

---

[8] The statute of limitations has run on the claims in this Action and only one set of investment funds filed an "opt out" individual complaint.  Assuming the funds in that case exclude themselves from the Settlement Class, they would not have standing to serve any objections to the Settlement.

proposed Class representatives, and represents an impressive recovery for the Class especially in light of Mallinckrodt's bankruptcy and substantial exposure to other claims.

## II.    THE NOTICE OF SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 n.11 (1974) (class notice is designed to fulfill due process requirements); *In re NASDAQ Litig.*, 1999 WL 395407, at *2 n. 3 (S.D.N.Y. June 15, 1999). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Walmart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d. 96, 114 (2d Cir. 2015) (internal citation omitted). "Notice is adequate if it may be understood by the average class member." *Id.* (internal citation omitted).

Here, in accordance with the Court's Preliminary Approval Order, starting on April 27, 2022, A.B. Data caused the Notice and Proof of Claim packets, as approved by the Court, to be mailed by first class mail to potential Settlement Class Members. ¶ 39. The Notice contains a thorough description of the Settlement, the Plan of Allocation, and Settlement Class Members' rights to participate in and object to the Settlement, or exclude themselves from the Settlement Class. ¶ 38. On May 2, 2022, the approved Summary Notice was published in the national edition of *Investor's Business Daily* and on May 5, 2022 released over the *PR Newswire*. ¶ 39. Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim Form, was also posted on a website devoted solely to the administration of the Settlement

(*http://www.mallinckrodtsecuritieslitigation.com*), as well as on Lead Counsel's website (*https://barrack.com/node/802*). *Id.*

The notice program, which combined an individual, mailed Notice and Proof of Claim packet to all potential Settlement Class Members who could be reasonably identified, as well as to custodian holders, and a Summary Notice published in a national investment publication and over the internet, contained all of the information required by § 21D(a)(7) of the PSLRA, and is adequate to meet the due process and Rule 23(c)(2) and (e) requirements for providing notice to the Settlement Class.

## III.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

To be approved, a plan of allocation for a class recovery must be fair and reasonable. *In re Fed. Nat'l Mortg. Ass'n Sec., Deriv., & "ERISA" Litig.,* 4 F. Supp. 3d at 108 (plan must only have "a reasonable, rational basis, particularly if recommended by experienced and competent class counsel"); *see also Maley v. Del Glob. Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("The proposed Plan of Allocation, which was devised by experienced plaintiffs' counsel who are familiar with the relative strengths and weaknesses of the potential claims of Class members, satisfie[d] the same standards of fairness, reasonableness, and adequacy that apply to the overall settlement."); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009). In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel. In re *Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001); *In re NASDAQ Litig.*, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000).

Here, Lead Plaintiff and Lead Counsel respectfully submit that the proposed Plan of Allocation, which is described in detail in a multi-page discussion in the Notice, is fair and reasonable. The Plan of Allocation is designed to achieve an equitable distribution of the Net

Settlement Fund. Lead Counsel worked closely with Lead Plaintiff's damages expert in establishing the Plan of Allocation and believes that the Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members. ¶¶ 53-62. Lead Plaintiff also believes that the Plan of Allocation represents a fair and reasonable method of valuing claims submitted by Settlement Class Members. Wideman Decl. ¶ 8.

In the Memorandum Opinion and Order, the Court sustained the claims alleging that Defendants violated the federal securities law by: (1) on October 6, 2015, misrepresenting the portion of Acthar sales attributable to Medicare and Medicaid; (2) in a Form 10-K filed on November 29, 2016, making false statements relating to an FTC investigation; and (3) from January 19, 2017 through August 8, 2017, making a series of false and misleading statements concerning Acthar sales and prospects, including financial and Acthar-related guidance to the market. Given this, the operative claims allege that Defendants made false statements and omitted material facts regarding three separate areas, which had the effect of artificially inflating the prices of Mallinckrodt common stock over three distinct time periods. For the first claim, Lead Plaintiff alleged Mallinckrodt's common stock price was inflated beginning on October 6, 2015 and that corrective disclosures removed this artificial inflation from the price of Mallinckrodt common stock on November 16-17, 2016. For the second claim, Lead Plaintiff alleged Mallinckrodt's common stock price was inflated beginning on November 29, 2016 and that corrective disclosures removed this artificial inflation from the price of the on January 18, 2017. For the third claim, Lead Plaintiff alleged Mallinckrodt's common stock price was inflated beginning on January 19, 2017 and that corrective disclosures removed this artificial inflation from the price of the stock on November 7, 2017.

The proposed Plan mirrors the claims in this Action. In order to have a "Recognized Loss Amount" under the Plan of Allocation, a putative Class member must have purchased shares of Mallinckrodt common stock during at least one of these three periods during the Class Period and held the purchased shares through each such claim's respective corrective disclosure date. And the amounts of the "Recognized Loss Amounts" correspond to the alleged inflation in the Company's stock at the time of a Settlement Class member's purchases, as reflected with certain adjustments based on industry and market conditions, in the stock price drops at the times of the alleged curative disclosures and as described in the Notice. Thus, the proposed Plan takes into account the stock drops that resulted from disclosures related to the three sets of claims in this Action, and provides for an allocation that divides the Net Settlement Fund dependent upon the purchase and sales prices (or prices following the disclosures) for each Class Member. This treats all similarly situated Class Members equitably and should be approved.

For these reasons, as more fully stated in the Golan Decl., Lead Plaintiff and Lead Counsel believe that the Plan of Allocation is a fair and reasonable way to apportion the Net Settlement Fund to Settlement Class members who timely file valid Proofs of Claim.

## IV. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

To effectuate the proposed Settlement, the Parties seek final certification of a Settlement Class consisting of all persons or entities who purchased or otherwise acquired Mallinckrodt common stock between October 6, 2015 and November 6, 2017, inclusive (the "Class Period"), and suffered damages as a result.[9]

---

[9] The initial complaints filed in this Action alleged a class period from July 14, 2014 to January 17, 2017, which is the day before the FTC filed a complaint and entered into a consent decree with the Company relating to alleged anti-competitive actions. The Complaint filed by STRS Ohio (ECF No. 51) added claims based on other alleged misstatements and omissions and alleged a class period from July 14, 2014 through November 6, 2017. Pursuant to the

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23 (b)(3) are not at issue. *See Amchem Products v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problem… is not a consideration when settlement-only certification is requested"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). Lead Plaintiff respectfully submits that the proposed Class meets all the requirements of Rule 23.

### A. The Class Satisfies the Requirements of Rule 23

In accordance with Federal Rule 23(a), certification is appropriate if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, "common" issues of law or fact must "predominate over any questions affecting only individual members," and a class action must be "superior" to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Rule 23(e) specifically authorizes the certification of "a class proposed to be certified for purposes of settlement … with the court's approval"; subpart (1) sets forth the requirements for notice to the proposed class while subpart

---

Memorandum Opinion and Order dismissing certain of the claims and upholding others, the Settlement contemplates and the Parties seek certification of a Settlement Class – consistent with the motion for class certification filed by STRS Ohio on July 29, 2020 – on behalf of purchasers of Mallinckrodt stock from October 6, 2015 through November 6, 2017, inclusive.

Excluded from the Class are: (a) Defendants; (b) members of the immediate family of each of the Individual Defendants; (c) any subsidiary or affiliate of Mallinckrodt and the directors, officers and employees of the Company or its subsidiaries or affiliates; (d) any person, firm, trust, corporation, officer, director, or any other individual or entity in which any Defendant has a controlling interest; and (e) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

(2) addresses the requirements to secure approval of the settlement proposal.[10]

**Numerosity.** As presented in Lead Plaintiff's motion for class certification, Mallinckrodt began the Class Period with approximately 116.3 million shares outstanding and concluded the Class Period with approximately 95.0 million shares. The average weekly trading volume in Mallinckrodt common stock was 11.6 million shares throughout the Class Period, and thus, there are likely thousands of Class members. "Absent unique circumstances, 'numerosity is satisfied when a proposed class has at least forty members.'" *Bunn*, 306 F.R.D. at 76 (quoting *Richardson v. L'Oréal USA, Inc.*, 991 F. Supp. 2d 181, 196 (D.D.C. 2013)); *Meijer, Inc. v. Warner Chilcott Holdings Co III, Ltd.*, 246 F.R.D. 293, 306 (D.D.C. 2007) (numerosity satisfied with class consisting of approximately 30 members). Thus, the numerosity prong is easily satisfied.

**Commonality, Typicality and Adequacy.** The Action involves many common issues of law and fact, readily satisfying Rule 23's commonality requirement and the proposed Class representatives' claims are typical of the claims of the Class because, like all other Settlement Class members, they purchased Mallinckrodt common stock at prices that Lead Plaintiff alleges were artificially inflated by Defendants' misrepresentations. Moreover, Lead Plaintiff (which purchased Mallinckrodt stock during the time periods relevant to the first two sets of claims) is a large institutional investor that, along with Local 677 (which purchased Mallinckrodt stock during the time period relevant to the third set of claims and which was proposed by Ohio STRS as an additional class representative), has adequately protected the Class's interests through its

---

[10] A determination as to class certification addresses only whether the requirements of Rule 23 have been met, not whether the plaintiffs will prevail on the merits. *See DL v. D.C.*, 713 F.3d 120, 125-26 (D.C. Cir. 2013); *accord Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). Thus, "the point of Rule 23 'is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently.'" *Coleman through Bunn v. D.C.*, 306 F.R.D. 68, 78 (D.D.C. 2015) (quoting *Amgen*, 568 U.S. at 460).

active oversight of this litigation and direct participation in the Mediation process, and Ohio STRS further selected competent and experienced counsel to pursue the claims on behalf of all Class members.

Commonality exists "'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Freeport Partners, L.L.C. v. Allbritton*, 2006 WL 627140, at *5 (D.D.C. Mar. 13, 2006) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001)). Indeed, lawsuits such as this one, where investors sue under the federal securities laws for misrepresentations or omissions affecting the price of a stock, are ideally suited for class treatment. *In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1176 (D.D.C. 1996) (common questions exist and a class action is appropriate "where members of a class are subject to the same misrepresentations and omissions, and where alleged misrepresentations fit within a common course of conduct...").[11]

Typicality is also established for purposes of certifying the Settlement Class. A class representative satisfies the typicality requirement "if the representative's 'claims are based on the same legal theory as the claims of the other class members' and her 'injuries arise from the same course of conduct that gives rise to the other class members' claims.'" *Bunn*, 306 F.R.D. at 83 (quoting *Bynum v. District of Columbia*, 214 F.R.D. 27, 35 (D.D.C. 2003)). Lead Plaintiff

---

[11] Based on the existence of common questions, courts have found that the class action mechanism is particularly well-suited for securities actions because the elements of the cause of action generally relate to the conduct of the defendants – their allegedly false and misleading public statements and omissions made in violation of the federal securities laws – and individual damages are likely to be too low to justify individual lawsuits. As such, many courts have held that "suits alleging violations of securities law ... are 'especially amenable' to class action certification." *Tsereteli v. Residential Asset Securitization Tr. 2006-A8*, 283 F.R.D. 199, 205-06 (S.D.N.Y. 2012) (collecting cases).

respectfully submits that the similarity of the claims of the class representatives with the claims of the Class satisfy these requirements.

Ohio STRS has also shown itself to be a more than adequate class representative. Ohio STRS is one of the nation's premier retirement systems, serving more than 500,000 active, inactive and retired Ohio public educators. Ohio STRS manages approximately $98.1 billion in assets in trust for its beneficiaries, making it one of the largest pension funds in the country. Wideman Decl. ¶ 3.

From the time of its appointment as Lead Plaintiff by this Court, Ohio STRS actively oversaw the litigation of the case; searched for and produced documents in response to Defendants' document requests; brought in a second proposed Class representative to provide a more complete representation of the Class; and, among other things, participated in and supported its counsel's efforts throughout the Mediation, the settlement documentation process, and during the Bankruptcy Court proceedings.[12] Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." When the class representatives have "a sufficient interest in the outcome of the case to ensure vigorous advocacy" and do not have interests "antagonistic to those of the proposed class," the adequacy requirement is met. 1-14A James Moore, *et al.*, *Moore's Manual Fed. Practice & Procedure* § 14A.25[1] (3d ed. 2012). As has been held in this District:

---

[12] *See generally* Wideman Decl. ¶¶ 5-6. Further, as asserted in the motion for class certification, STRS Ohio purchased more than 200,000 shares of Mallinckrodt stock during the Class Period, and suffered a loss when Mallinckrodt's stock declined in value on November 16-17, 2016 and January 18, 2017. The proposed additional Class representative, Local 677, a pension fund serving more than 2,800 active, inactive and retired beneficiaries with investment assets of over $90 million as of June 2020, purchased 120 shares of Mallinckrodt stock on June 23, 2017 and continued to hold the stock through the end of the Class Period, thereby suffering a loss with the price decline on November 7, 2017.

"[t]wo criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel."

*Meijer*, 246 F.R.D. at 302 (citation omitted). These factors are met.

**Predominance and Superiority.** Lead Plaintiff further respectfully submits that this Action satisfies the predominance and superiority requirements of Rule 23(b)(3). "The 'predominance' test of Rule 23 (b)(3) is generally satisfied 'when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position.'" *Freeport Partners*, 2006 WL 627140, at *8 (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)). Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof,'" merely "that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen*, 568 U.S. at 469 (emphasis omitted). For class certification purposes, the Supreme Court has further held that falsity, materiality, and loss causation are common issues because the failure to prove any one of these elements "would end the case" for all putative class members. *See id.*, 568 U.S. at 467-68 ("materiality is a 'common question' for purposes of Rule 23(b)(3)") (citation omitted).

Here, the expert report of Dr. Hartzmark, submitted in support of Lead Plaintiff's motion for class certification, concluded that the market for Mallinckrodt stock was efficient throughout the Class Period and that damages could be calculated using a common methodology on a class-wide basis. These findings – along with the claims that Lead Plaintiff asserted in this Action on behalf of the Settlement Class – support that the Class may invoke the "fraud-on-the-market" presumption of reliance, which in turn supports a finding of predominance. *See Halliburton Co.*

28

*v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014). Thus, as in most securities fraud class action cases, Defendants' alleged misconduct affected all Class members in the same manner – namely, Defendants' alleged false and misleading statements and omissions is alleged to have artificially inflated the price of Mallinckrodt common stock. *See Amchem Prod., Inc.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging ... securities fraud…"); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 247 F.R.D. 32, 41 (D.D.C. 2008) (securities fraud suits "are particularly amenable to class certification").

The "superiority" factor under Rule 23(b)(3) is satisfied because: (a) numerous investors are alleged to have suffered damages as a result of Defendants' misconduct; (b) it is unlikely that investors who lost relatively small amounts of money would file individual actions due to litigation costs (indeed, the statute of limitations has run on the claims in this Action and only one set of investment funds filed an "opt out" individual complaint); (c) it is desirable to hear all such claims in one court; and (d) there is no difficulty in maintaining this case on behalf of the Settlement Class. Courts recognize the class action device as superior to other methods for fairly and efficiently adjudicating large-scale securities class actions, which assert claims on behalf of numerous individuals. The Supreme Court has explained that class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and that "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *accord Bunn*, 306 F.R.D. at 87.

Accordingly, the Parties respectfully submit that this Court should certify, for purposes of Settlement only, a Settlement Class under Rules 23(a), 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure.

### B. Lead Counsel Should be Appointed Class Counsel

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel when certifying a class action. As detailed above, and as the Court is aware, Lead Counsel already performed substantial work in investigating and prosecuting claims in this Action, are experienced in handling complex litigation, especially of the type asserted in this Action, and have extensive knowledge of the applicable securities laws. *See* Golan Decl., Exhibit 2A. After the appointment of Ohio STRS as Lead Plaintiff and the Court's approval of Ohio STRS's chosen counsel, the undersigned Lead Counsel investigated and filed the Complaint on May 18, 2018, providing sufficient allegations to support the claims upheld by this Court in its Memorandum Opinion and Order of July 30, 2019 – including claims based on statements made by Defendants during 2017 that had not previously been alleged in this Action. ¶¶ 8-12. The Firm engaged in extensive meet and confer sessions with Defendants' counsel in negotiating and arriving at an ESI Protocol, Confidentiality Order, and highly specific production and search parameters for the Parties' productions of documents; produced and reviewed over 250,000 pages of documents in the litigation of the case; retained a market efficiency expert and filed a comprehensive motion for class certification on July 30, 2020; and led the settlement negotiations that produced a substantial proposed settlement, especially considering Mallinckrodt's bankruptcy. ¶¶ 22-39.

These facts all support appointing Barrack, Rodos & Bacine as Class Counsel pursuant to Fed. R. Civ. P. 23(e). *See In re Pfizer Inc. Secs. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012) (appointing class counsel that had "devoted considerable resources to this case since it was first filed, and has effectively protected the interests of Plaintiffs and the putative class"). Accordingly, under the considerations identified in Rule 23(g)(1), Lead Counsel has demonstrated it is qualified for appointment as class counsel.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Lead Plaintiff respectfully requests that this Court: (i) approve the proposed Settlement as fair, reasonable and adequate; (ii) approve the proposed Plan of Allocation as fair and reasonable; (iii) certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (iv) appoint the law firm of Barrack, Rodos & Bacine as class counsel; and (v) grant such further relief as the Court deems just and proper.

Dated: June 13, 2022          Respectfully submitted,

*/s/ Jeffrey W. Golan*
**BARRACK, RODOS & BACINE**
Leonard Barrack
Jeffrey W. Golan (pro hac vice)
Jeffrey B. Gittleman (pro hac vice)
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
lbarrack@barrack.com
jgolan@barrack.com
jgittleman@barrack.com

Zarema A. Jaramillo
DC Bar No. 500507
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 753-3830
zjaramillo@lowenstein.com

*Attorneys for Lead Plaintiff, State Teachers
Retirement System of Ohio and Lead Counsel for
the Class*

**MURRAY MURPHY MOUL + BASIL LLP**
Brian K. Murphy (pro hac vice)
Joseph F. Murray
Geoffrey J. Moul
1114 Dublin Rd.

31

Columbus, OH 43215
Telephone: (614) 488-0400
murphy@mmmb.com
murray@mmmb.com
moul@mmmb.com

*Special Counsel for State Teachers*
*Retirement System of Ohio*