CARELLA, BYRNE, CECCHI, BRODY
  & AGNELLO, P.C.
JAMES E. CECCHI
KEVIN G. COOPER
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

Local Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BARBARA STROUGO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 3:20-cv-10100-RK (TJB) |
| Plaintiff, | ) ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, |
| MALLINCKRODT PUBLIC LIMITED COMPANY, et al., | ) ) ) | AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |
| Defendants. | ) ) ) | |

4916-5963-6511.v1

**TABLE OF CONTENTS**

**Page**

I.      OVERVIEW .......................................................................................................1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY..................4

III.    THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES
        SHOULD BE APPROVED...............................................................................5

        A.      Plaintiffs' Counsel Are Entitled to a Fee from the Common
                Fund.....................................................................................................6

        B.      The Court Should Award Attorneys' Fees Using the Percentage
                Approach ..............................................................................................7

        C.      The Requested Fee Is Presumptively Reasonable Because It
                Has Been Approved by the Plaintiffs....................................................8

        D.      The Requested Fee Is Fair and Reasonable Under the *Gunter*
                Factors ..................................................................................................9

                1.      The Size of the Common Fund Created and the Number
                        of Persons Benefited by the Settlement ....................................10

                2.      Reaction of Class Members to the Fee Request ........................11

                3.      The Skill and Efficiency of Counsel..........................................12

                4.      The Complexity and Duration of the Litigation ........................14

                5.      The Risk of Non-Payment ..........................................................16

                6.      The Significant Time Devoted to This Case...............................19

                7.      The Range of Fees Typically Awarded ......................................20

        E.      The Requested Fee Is Reasonable Under a Lodestar Cross-
                Check...................................................................................................21

        F.      Reasonably Incurred Litigation Expenses Should Be Awarded ........24

4916-5963-6511.v1

**Page**

G.    Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4).......................................................................25

IV.    CONCLUSION...............................................................................27

- ii -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier Inc.*,
   50 F.3d 1204 (3d Cir. 1995) ................................................................24

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) ..................................................................18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).............................................................................6

*Beltran v. SOS Ltd.*,
   2023 WL 319895 (D.N.J. Jan. 3, 2023),
   *report & recommendation adopted*,
   2023 WL 316294 (D.N.J. Jan. 19, 2023)...........................................20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..........................................................................6, 7

*Dartell v. Tibet Pharms., Inc.*,
   2017 WL 2815073 (D.N.J. June 29, 2017)...............................8, 10, 14

*Fanning v. Acromed Corp.*,
   2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) .......................................8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................21

*Grier v. Chase Manhattan Auto. Fin. Co.*,
   2000 WL 175126 (E.D. Pa. Feb. 16, 2000) .........................................8

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ........................................................*passim*

*Hall v. Accolade, Inc.*,
   2020 WL 1477688 (E.D. Pa. Mar. 25, 2020) ......................................8

4916-5963-6511.v1

**Page**

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)................................................................................10

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
    2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) ................................12, 16

*Howard v. Arconic Inc.*,
    No. 2:17-cv-01057-MRH, ECF 253
    (W.D. Pa. Aug. 9, 2023) ...............................................................20, 23, 27

*In re Alstom SA Sec. Litig.*,
    741 F. Supp. 2d 469 (S.D.N.Y. 2010) ...............................................18

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)............................................................23

*In re AT&T Corp.*,
    455 F.3d 160 (3d Cir. 2006) ........................................................8, 21

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..............................................................12

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ...........................................................7, 8

*In re CIGNA Corp. Sec. Litig.*,
    No. 2:02-cv-08088-MMB, ECF 288
    (E.D. Pa. July 13, 2007)...................................................................27

*In re Computron Software, Inc.*,
    6 F. Supp. 2d 313 (D.N.J. 1998).......................................................12

*In re DaimlerChrysler AG Sec. Litig.*,
    2004 WL 7351531 (D. Del. Jan. 28, 2004) ......................................24

4916-5963-6511.v1

**Page**

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
  *aff'd in part, rev'd in part*,
  999 F. 3d 1247 (11th Cir. 2021) ................................................................23

*In re Eros Int'l PLC Sec. Litig.*,
  2023 WL 8519091 (D.N.J. Nov. 28, 2023) .................................................20, 26

*In re General Motors Corp. Pick-Up Truck*
  *Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................................7

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)............................................................7, 14, 21

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ....................................................................5, 7

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004)...........................................................8, 14

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010)..........................................................21

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) ............................................................18

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ......................................................27

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ....................................................................22

*In re S.S. Body Armor I, Inc. v. Carter Ledgard & Milburn LLP*,
  927 F.3d 763 (3d Cir. 2019) ....................................................................22

4916-5963-6511.v1

**Page**

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012)......................................................16, 24

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013) ......................................................25, 27

*In re Suboxone (Buprenorphine Hydrochloride
  & Naloxone) Antitrust Litig.*,
  2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ........................................................20

*In re Tesla, Inc. Sec. Litig.*,
  2022 WL 1497559 (N.D. Cal. Apr. 1, 2022)........................................................17

*In re Tesla, Inc. Sec. Litig.*,
  No. 3:18-cv-04865-EMC, ECF 671
  (N.D. Cal. Feb. 3, 2023) ....................................................................................17

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2021 WL 358611 (D.N.J. Feb. 1, 2021),
  *aff'd in part, appeal dismissed in part sub nom.*,
  *TIAA v. Valeant Pharms. Int'l, Inc.*,
  2021 WL 6881210 (3d Cir. Dec. 20, 2021)............................................................9

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) .........................................................................22

*In re ViroPharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...................................................*passim*

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964)................................................................................................6

*Kanefsky v. Honeywell Int'l Inc.*,
  2022 WL 1320827 (D.N.J. May 3, 2022)..............................................17, 19, 27

*Li v. Aeterna Zentaris Inc.*,
  2021 WL 2220565 (D.N.J. June 1, 2021).............................................................27

4916-5963-6511.v1

**Page**

*McDermid v. Inovio Pharms., Inc.*,
　2023 WL 227355 (E.D. Pa. Jan. 18, 2023)........................................8, 12, 13, 16

*Mo. v. Jenkins by Agyei*,
　491 U.S. 274 (1989)..................................................................................23

*Moore v. GMAC Mortg.*,
　2014 WL 12538188 (E.D. Pa. Sept. 19, 2014)..............................................21

*Morrison v. Nat'l Austl. Bank Ltd.*,
　561 U.S. 247 (2010)..................................................................................18

*Nguyen v. Educ. Comput. Sys., Inc.*,
　2024 WL 3691614 (W.D. Pa. Aug. 7, 2024).............................................20, 24

*P. Van Hove BVBA v. Universal Travel Grp.*,
　2017 WL 2734714 (D.N.J. June 26, 2017)......................................................8

*Rowe v. E.I. DuPont de Nemours & Co.*,
　2011 WL 3837106 (D.N.J. Aug. 26, 2011) ....................................................10

*Schuler v. Meds. Co.*,
　2016 WL 3457218 (D.N.J. June 24, 2016)..................................6, 10, 22, 23

*Stevens v. SEI Invs. Co.*,
　2020 WL 996418 (E.D. Pa. Feb. 28, 2020)....................................................22

*Teh Shou Kao v. CardConnect Corp.*,
　2021 WL 698173 (E.D. Pa. Feb. 23, 2021)....................................................22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
　551 U.S. 308 (2007).....................................................................................6

*Utah Ret. Sys. v. Healthcare Servs. Grp.*,
　2022 WL 118104 (E.D. Pa. Jan. 12, 2022).............................................9, 15, 27

*Whiteley v. Zynerba Pharms., Inc.*,
　2021 WL 4206696 (E.D. Pa. Sept. 16, 2021)..................................................20

4916-5963-6511.v1

**Page**

*Wood v. AmeriHealth Caritas Servs., LLC,*
2020 WL 1694549 (E.D. Pa. Apr. 7, 2020) .......................................................22

*Yedlowski v. Roka Bioscience, Inc.,*
2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..................................................14, 25

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78u-4(a)(4) ...............................................................................*passim*
§78u-4(a)(6) ...........................................................................................8

Federal Rules of Civil Procedure
Rule 23(h) ...............................................................................................5

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995),
*reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ......................................................26

4916-5963-6511.v1

Lead Counsel,[1] on behalf of all Plaintiffs' Counsel, respectfully submits this memorandum of law in support of its motion for attorneys' fees, litigation expenses, and for awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) for their work on behalf of the Class.

## I.    OVERVIEW

This Settlement, consisting of $46 million in cash, which resulted from arm's-length mediation overseen by David M. Murphy, Esq. of Phillips ADR, an experienced mediator, represents a very good recovery for the Class.  The Settlement follows over five years of lengthy and hard-fought litigation.  *See generally* Declaration of Michael G. Capeci in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Capeci Declaration" or "Capeci Decl."), submitted herewith.

Lead Counsel's request for an award of attorneys' fees, payment of litigation expenses, and Plaintiffs' requests for awards pursuant to 15 U.S.C. §78u-4(a)(4), are reasonable and well within the range approved in similar matters and should be

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement dated September 18, 2024 (ECF 148-4) (the "Stipulation").  All citations are omitted and emphasis is added unless otherwise indicated.

- 1 -

4916-5963-6511.v1

approved.  Lead Counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long the litigation would last or whether there would ultimately be any recovery.  Throughout the Litigation, Lead Counsel faced off in the U.S. District Court for the Southern District of New York, this Court, and in the U.S. Bankruptcy Court in the District of Delaware against highly sophisticated counsel.  Over the past five-plus years, Lead Counsel conducted a thorough investigation into the facts giving rise to this Litigation; drafted an amended complaint which, in large part, satisfied the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); opposed Defendants' motion to dismiss; propounded and responded to discovery; litigated to protect the Class's interests in Mallinckrodt's two bankruptcy proceedings; briefed class certification; and identified and retained experts and consultants.  *See generally*, Capeci Decl.  Lead Counsel also engaged in mediation and negotiations overseen by David M. Murphy, a highly respected and experienced mediator.  All of this work resulted in the recovery presented here for final approval and supports Lead Counsel's fee and expense request.

Lead Counsel firmly believes that the Settlement is the result of its strenuous, diligent, and creative efforts, as well as its well-earned reputation as a firm whose attorneys are unwavering in their dedication to the interests of their clients and willing to zealously prosecute a meritorious case through trial and subsequent appeals.  Here,

- 2 -

4916-5963-6511.v1

in a case asserting claims based on complex legal and factual issues that were opposed by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing a very good result for the Class.

Plaintiffs' Counsel dedicated more than 8,200 hours of attorney and other professional staff time to bring the Litigation to this favorable resolution for Class Members. Capeci Decl., ¶156. In class actions like this one, which are prosecuted on a contingent-fee basis, courts often award fees representing a "multiplier" of counsel's lodestar (often one to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors. Here, Lead Counsel's requested one-third fee represents a lodestar multiplier of approximately 2.90, well within the range of multipliers approved in the courts throughout this Circuit and nationwide.

Further, the requested fees have been approved by Plaintiffs. *See* Declarations of Gregory Manion ("Manion Decl.") and David Williams ("Williams Decl."), submitted herewith. Plaintiffs evaluated the request for fees and expenses and have determined that the requested fees are warranted based on counsel's diligent and aggressive prosecution of the Litigation. *Id.* As a result, the fee request is entitled to a "presumption of reasonableness." *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *15-*16 (E.D. Pa. Jan. 25, 2016) ("Where the Lead Plaintiff approves the Lead Plaintiff's counsel's request[ed] fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

- 3 -

For all the reasons set forth herein, in the Capeci Declaration, and in the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), Lead Counsel respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and should be awarded by the Court. Likewise, the modest awards sought by Plaintiffs are fully justified given their significant efforts on behalf of the Class.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To avoid repetition, Lead Counsel respectfully refers the Court to the Settlement Memorandum and the Capeci Declaration for detailed discussions of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Counsel and Plaintiffs during the course of the Litigation, the risks of the Litigation, and the negotiations leading to the Settlement.

In summary, however, in the more than five years that this case was actively litigated, Lead Counsel filed an amended complaint; briefed Mallinckrodt's and the Individual Defendants' motion to dismiss; litigated and sought to protect the Class's interests during Mallinckrodt's two bankruptcy proceedings; briefed Plaintiffs' class certification motion, including a motion to exclude the Individual Defendants' expert; conducted extensive document discovery; retained experts and consultants; and

- 4 -

4916-5963-6511.v1

engaged in arm's-length settlement negotiations overseen by an eminently qualified mediator.

## III.  THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case.  *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).

Here, Lead Counsel requests attorneys' fees of one-third of the Settlement Fund plus litigation costs, charges, and expenses.  Per the Stipulation, Lead Counsel will allocate the attorneys' fees among Plaintiffs' Counsel in a manner that Lead Counsel in good faith believes reflects the contributions of such counsel to the prosecution and resolution of the Litigation.  Stipulation, ¶6.2.  Also, Plaintiffs Canadian Elevator Industry Pension Trust Fund and City of Sunrise Police Officers' Retirement Plan seek awards of $10,000 and $8,250, respectively, pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

These requests are fair and reasonable, and well within the range of fees and expenses typically granted in similar matters.  The Settlement is a very good result for the Class in the face of significant risks.  This case involved substantial outlays of costs and attorney and staff time, with no guarantee of any ultimate recovery.  Further,

Lead Counsel brought substantial experience to its work on this case, and skillfully overcame defense counsel's determined opposition. For these reasons, and as detailed below, Lead Counsel respectfully requests that these attorneys' fees, expenses, and PSLRA awards to Plaintiffs be approved.

### A. Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund

It is well-established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *ViroPharma*, 2016 WL 312108, at *15 (same). Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund ensure that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016). The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See, e.g.*, *ViroPharma*, 2016 WL 312108, at *15 ("'The common fund doctrine provides that a

- 6 -

4916-5963-6511.v1

private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members."). The determination of the proper amount of attorneys' fees to award rests within the sound discretion of the court. *Ins. Brokerage*, 579 F.3d at 280.

**B.     The Court Should Award Attorneys' Fees Using the Percentage Approach**

The Supreme Court has recognized that it is appropriate to award counsel a reasonable percentage of a common fund as a fee. *See Boeing*, 444 U.S. at 478-79. Further, the Third Circuit has noted that "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005). This is because the percentage method aligns counsel's interests with those of the class.

Courts in this Circuit recognize that the percentage-of-recovery method is preferred in common fund cases because it rewards counsel for success, penalizes counsel for failure, and ensures that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter*, 223 F.3d at 198; *see also*

- 7 -

*McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at \*11 (E.D. Pa. Jan. 18, 2023) (same); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("In common fund cases such as this one, the percentage-of-recovery method is generally favored . . . ."); *see also Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at \*8 (D.N.J. June 29, 2017) ("The percentage-of-recovery method is preferred in common fund cases because it 'rewards counsel for success and penalizes it for failure.'"); *P. Van Hove BVBA v. Universal Travel Grp.*, 2017 WL 2734714, at \*10 (D.N.J. June 26, 2017) (same); *Hall v. Accolade, Inc.*, 2020 WL 1477688, at \*10 (E.D. Pa. Mar. 25, 2020); *Fanning v. Acromed Corp.*, 2000 WL 1622741, at \*5 (E.D. Pa. Oct. 23, 2000); *Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126, at \*7 (E.D. Pa. Feb. 16, 2000).

The PSLRA likewise contemplates the percentage recovery to be the appropriate standard in awarding fees, as it provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Cendant*, 404 F.3d at 188 n.7 (the percentage method is "the standard" in PSLRA cases).

### C. The Requested Fee Is Presumptively Reasonable Because It Has Been Approved by the Plaintiffs

Plaintiffs, sophisticated institutional investors who took an active role in the Litigation, support approval of the requested fee. Plaintiffs' endorsement of the fee request supports its approval. *See, e.g., In re Lucent Techs., Inc. Sec. Litig.*, 327 F.

- 8 -

Supp. 2d 426, 442 (D.N.J. 2004).  Indeed, while approval of the fee is left to the sound discretion of the Court, the fact the requested award has the support of Plaintiffs affords it a "presumption of reasonableness."  *See ViroPharma*, 2016 WL 312108, at *15; *Utah Ret. Sys. v. Healthcare Servs. Grp.*, 2022 WL 118104, at *11 (E.D. Pa. Jan. 12, 2022) ("Given that Lead Plaintiff, a sophisticated entity, reviewed and approved the fee, this presumption applies."); *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *5 (D.N.J. Feb. 1, 2021) (same), *aff'd in part, appeal dismissed in part sub nom.*, *TIAA v. Valeant Pharms. Int'l, Inc.*, 2021 WL 6881210 (3d Cir. Dec. 20, 2021).

### D.    The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors

Under Third Circuit law, district courts have considerable discretion on setting an appropriate percentage-based fee award in traditional common fund cases.  *See, e.g.*, *Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees.").

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider, "among other things," the following factors in determining a fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of

- 9 -

the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 195 n.1. These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id.*; *Schuler*, 2016 WL 3457218, at *9. Here, each factor supports the requested one-third fee award.

### 1.    The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement

In awarding fees, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *ViroPharma*, 2016 WL 312108, at *16 (same). To assess this factor, courts "'consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'" *Dartell*, 2017 WL 2815073, at *9 (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)).

Here, the $46 million Settlement is a very good result that provides an immediate cash recovery to a large class of investors. There were substantial risks to proceeding and proving liability and damages. Capeci Decl., ¶¶137-145; Settlement Memorandum, §V.C. If this Litigation were to continue absent the Settlement, Plaintiffs faced the significant risk that the class would not be certified, that the class period would be shortened to align with the SEC's settled claims, or that the case would be dismissed at summary judgment or at trial, decreasing the likelihood of obtaining any recovery in the future. Moreover, any available insurance would

- 10 -

continue to be depleted by defense costs, decreasing the likelihood of comparable recovery in the future. In light of this and other factors, after discussions and negotiations, including two formal mediation sessions, Mr. Murphy recommended that the parties accept a $46 million settlement. As discussed in the Settlement Memorandum (§V.C.4.), the Settlement is a good result under the circumstances.

Additionally, the "number of class members to be benefitted" by the Settlement is undoubtedly large, since the Class includes all Persons who purchased or otherwise acquired Mallinckrodt common stock between May 3, 2016, and March 13, 2020, inclusive (excluding those individuals and entities who are excluded by definition or who request exclusion from the Class). Likely thousands of investors who bought Mallinckrodt common stock during that period will benefit from the Settlement. *See* Settlement Memorandum, §II.B. (over 114,000 Postcard Notices were sent to potential Class Members). For these reasons, the first *Gunter* factor clearly weighs in favor of approving the fee.

### 2. Reaction of Class Members to the Fee Request

Notice of this Settlement, including the fee request, has been provided to potential Class Members. *See generally* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, submitted herewith. To date, *no* objections to the fee request have been submitted. Capeci Decl., ¶167. Thus, the reaction of the Class weighs in favor of approval of the

- 11 -

4916-5963-6511.v1

requested fee. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (stating that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *see also High St. Rehab., LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784, at *4 (E.D. Pa. Aug. 29, 2019) ("A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy."); *Inovio*, 2023 WL 227355, at *12 (fact that there were no objections to fee request "favors approval").

### 3.    The Skill and Efficiency of Counsel

The third *Gunter* factor, the skill and efficiency of the attorneys involved, is measured by the "'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *ViroPharma*, 2016 WL 312108, at *16 (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)). Here, each of these considerations demonstrates the skill and efficiency of Lead Counsel and supports the requested fee.

Among other things, Lead Counsel investigated the Individual Defendants' and Mallinckrodt's conduct; drafted a detailed amended complaint; opposed Mallinckrodt's and the Individual Defendants' motion to dismiss; conducted extensive

- 12 -

document discovery; moved for class certification; moved to strike the Individual Defendants' expert; and retained experts and consultants to assist it in pursuing claims against the Individual Defendants. Lead Counsel also worked diligently to protect the Class's interests in the Bankruptcy Court over the course of Mallinckrodt's two bankruptcy proceedings. Finally, Lead Counsel engaged in arm's-length settlement negotiations with an experienced mediator. *See generally* Capeci Decl.

By any measure, Lead Counsel's efforts have resulted in a highly favorable outcome for the benefit of the Class in a case where they very likely could have received nothing. The substantial and certain recovery obtained is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions. Lead Counsel has a well-earned reputation as a firm whose attorneys and staff will zealously litigate a meritorious case through the trial and appellate stages. *See, e.g.*, *Jaffe v. Household Int'l, et al.*, No. 1:02-cv-05893 (N.D. Ill.) (Robbins Geller obtained $1.575 billion settlement after 14 years of litigation and prevailing at trial); *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865 (C.D. Cal.) (Robbins Geller secured a jury verdict in 2019 in a securities fraud class action). *See also Inovio*, 2023 WL 227355, at *12 ("Additionally, Robbins Geller Rudman & Dowd LLP's skill and experience in securities class actions has been well noted . . . and favors approval of the requested award.").

- 13 -

The Individual Defendants undoubtedly considered this when they decided to forego further legal challenges and agreed to settle this case for $46 million. Ultimately, this excellent result is the best indicator of the skill and expertise that Lead Counsel brought to this matter. *See Lucent Techs.*, 327 F. Supp. 2d at 436 ("Indeed, 'the results obtained' for a class evidence the skill and quality of counsel.").

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel. *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Dartell*, 2017 WL 2815073, at *9 ("'The quality and vigor of opposing counsel' is relevant when evaluating the quality of services rendered by Lead Counsel.") (quoting *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016)). The Individual Defendants were represented by attorneys from Hogan Lovells US LLP, a prominent law firm with widely recognized experience and skill. The ability of Lead Counsel to obtain such a favorable settlement for the Class in the face of such formidable opposition further confirms the superior quality of the representation.

### 4.    The Complexity and Duration of the Litigation

As detailed in the Capeci Declaration and the Settlement Memorandum, this Litigation has spanned over five years and involved full briefing on the Individual Defendants' motion to dismiss. Fact discovery was underway, and briefing on Plaintiffs' class certification motion was near completion. Each of these stages of

- 14 -

4916-5963-6511.v1

litigation presented obstacles that Lead Counsel skillfully overcame. In order to secure this recovery, Lead Counsel analyzed hundreds of thousands of pages of documents produced by both parties and non-parties, and used the fact and expert discovery record to support Plaintiffs' claims that the Individual Defendants' alleged misstatements and omissions were materially false and misleading and made with scienter. Further, because this case involves multiple corrective disclosures, Lead Counsel had to establish that each such disclosure in fact revealed corrective information to the market, and marshalled expert opinion that the stock price declines on the relevant dates were not caused by other market-wide, industry-specific, or Mallinckrodt-specific factors. Plaintiffs' and the Individual Defendants' experts also differed as to the proper measure of damages as an economic matter – the Individual Defendants maintained (supported by expert opinion) that even if liability was established, Plaintiffs' allegations did not give rise to any cognizable damages. In any event, this case would likely continue for many more years, through the completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.

Multiple complex factual and legal issues are expected to arise in the course of this Litigation. In light of the complexity and duration of this case, this factor favors approval of the requested attorneys' fees. *See Healthcare Servs. Grp.*, 2022 WL 118104, at *12 ("Regarding the fourth [*Gunter*] factor, securities litigation is inherently complex, expensive, and lengthy, usually requiring expert testimony on

- 15 -

variety of issues.  Without a settlement, a significant amount of time and resources would be necessary to bring the case to a close."); *see also Inovio*, 2023 WL 227355, at *12 ("With efforts spanning almost three years, Counsel's requested fees are justified.").

### 5.    The Risk of Non-Payment

Plaintiffs' Counsel prosecuted this case on a contingency fee basis.  Thus, without a settlement or a trial victory, they would go unpaid.  This created an incentive to litigate the case aggressively and seek the best recovery possible.  Unlike counsel for the Individual Defendants, who are paid at an hourly rate and paid for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2019.  Since that time, Plaintiffs' Counsel have expended over 8,200 hours in the prosecution of this Litigation and incurred nearly one million dollars in litigation costs, charges, and expenses.  "'Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.'" *High St. Rehab.*, 2019 WL 4140784, at *13; *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (approving 33.3% fee; noting that "the risk created by undertaking an action on a contingency fee basis militates in favor of approval").

- 16 -

4916-5963-6511.v1

Even though Plaintiffs' claims mostly survived the pleading stage, Plaintiffs still faced hurdles in prevailing on the pending class certification motion, and on the Individual Defendants' summary judgment motion, which they would undoubtedly file at the end of discovery, and later, at trial. As set forth in more detail in the Settlement Memorandum and the Capeci Declaration, the Individual Defendants argued that the discovery will confirm that they did not make any materially false or misleading statement or omission, with scienter or otherwise. Capeci Decl., ¶¶32, 137-139; Settlement Memorandum, §V.C.1. Likewise, the Individual Defendants have argued that there is no evidence to support loss causation or damages. Capeci Decl., ¶143; Settlement Memorandum, §V.C.1; *see also In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants where court had previously granted summary judgment in favor of plaintiffs on certain elements). In a "battle of the experts," the Court or jury could side with the Individual Defendants' experts and find no damages or only a fraction of the damages Plaintiffs claimed. *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *10 (D.N.J. May 3, 2022) (noting the various risks of nonpayment supporting the requested fee).

The risk of no recovery for the class and counsel in complex cases of this type is very real. There are scores of hard-fought lawsuits where, because of the discovery

- 17 -

of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, extensive professional efforts of members of the plaintiffs' bar produced no fee for counsel. *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review, after plaintiffs' counsel incurred nearly $7 million in expenses, and worked over 115,000 hours); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even the most promising cases can be eviscerated by a sudden change in the law after years of litigation. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (After completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort. This factor strongly favors approval of the requested fee.

- 18 -

### 6.    The Significant Time Devoted to This Case

The significant time that counsel devoted to this case favors approval of the requested attorneys' fees.  Counsel collectively invested more than 8,200 hours of attorney and support staff time over the course of five-plus years and incurred $970,949.13 in expenses prosecuting this case for the benefit of the Class, without promise of payment of attorneys' fees or expenses if Plaintiffs did not prevail on their claims.  *See* Declaration of Michael G. Capeci Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee and Expense Decl."), ¶¶4-5; Declaration of James E. Cecchi Filed on Behalf of Carella, Bryne, Cecchi, Brody & Agnello, P.C. in Support of Application for Award of Attorneys' Fees and Expenses ("Carella Byrne Fee and Expense Decl."), ¶¶4-5, submitted herewith.

As discussed above and in the Capeci Declaration, this Litigation was actively litigated and vigorously defended for more than five years at the time the parties agreed to the Settlement.  The Individual Defendants fought Plaintiffs at every step of the Litigation.  The successful resolution of this Litigation required Plaintiffs' Counsel to commit a significant amount of time and expense to the case.[2]

---

[2]    Lead Counsel's efforts will not end at final approval of the Settlement.  Many additional hours and resources will be expended assisting Class Members with claim administration. *Kanefsky*, 2022 WL 1320827, at *11.

- 19 -

4916-5963-6511.v1

### 7.   The Range of Fees Typically Awarded

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund." *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (holding that this factor weighs in favor of approval where 33% fee request "falls in the middle" of the range of fees granted in comparable securities class actions in the Third Circuit); *see also Nguyen v. Educ. Comput. Sys., Inc.*, 2024 WL 3691614, at *10 (W.D. Pa. Aug. 7, 2024) (finding one-third fee "comparable to fee awards in similar cases").

Courts in the Third Circuit award fee percentages similar to the requested fee of one-third in this case. *See In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024) (awarding 32% of $385 million settlement); *In re Eros Int'l PLC Sec. Litig.*, 2023 WL 8519091, at *1 (D.N.J. Nov. 28, 2023) (awarding fees "of 33 1/3% of the Settlement Fund (which amount includes interest earned at the same rate as the Settlement Fund)"); *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, ECF 253 (W.D. Pa. Aug. 9, 2023) (awarding 33-1/3% of $74 million settlement); *Beltran v. SOS Ltd.*, 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023) (Pascal, M.J.) (awarding one-third of settlement as "within the typical range and . . . reasonable"), *report & recommendation adopted*,

4916-5963-6511.v1

2023 WL 316294 (D.N.J. Jan. 19, 2023). Because the requested fee is reasonable in relation to fees typically awarded in similar cases, this factor favors approval of the requested fee award.[3]

### E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Courts in the Third Circuit may, but are not required to, also use a "lodestar cross-check" to confirm the reasonableness of a percentage fee. *See Moore v. GMAC Mortg.*, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (stating that the "lodestar cross-check is 'suggested,' but not mandatory"). If used, the lodestar cross-check "should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.[4]

---

[3]    In evaluating attorneys' fee requests, courts in the Third Circuit have also considered factors such as whether the fee award "reflects commonly negotiated fees in the private marketplace," and any benefit received from the efforts of government agencies, or any innovative terms of settlement. *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *12-*13 (D.N.J. Feb. 9, 2010). These additional factors also favor approval of the requested fee here, as the advancement of this case was based upon the efforts of counsel, not government agencies, and a one-third fee is within the range of commonly negotiated contingent fees. *See id.* at *12 (noting that contingent fees in the private marketplace are commonly 30% to 40%).

[4]    Placing too much emphasis on the lodestar method "may encourage attorneys to delay settlement or other resolution to maximize legal fees" and "may also compensate attorneys insufficiently for the risk of undertaking complex or novel cases on a contingency basis." *Ikon*, 194 F.R.D. at 193. Given its limited value, some courts consider a lodestar review "an inevitable waste of judicial resources." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000).

- 21 -

The Third Circuit has recognized that when used, the lodestar cross-check "need entail neither mathematical precision nor bean-counting," and "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). The lodestar cross-check involves simply comparing counsel's "lodestar" – *i.e.*, timekeepers' hourly rates multiplied by the number of hours spent on the case – to the fee resulting from the requested percentage award, and assessing the reasonableness of the resulting multiplier. The appropriate multiplier varies based on the specifics of each case and "'need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award.'" *Schuler*, 2016 WL 3457218, at *10 (quoting *Rite-Aid*, 396 F.3d at 307).

The Third Circuit has recognized that percentage awards that result in multipliers "'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010); *accord In re S.S. Body Armor I, Inc. v. Carter Ledgard & Milburn LLP*, 927 F.3d 763, 774 (3d Cir. 2019); *Teh Shou Kao v. CardConnect Corp.*, 2021 WL 698173, at *11 (E.D. Pa. Feb. 23, 2021); *Wood v. AmeriHealth Caritas Servs., LLC*, 2020 WL 1694549, at *10 (E.D. Pa. Apr. 7, 2020); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16; noting that "multiples ranging from 1 to 8 are often

- 22 -

used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage. As detailed in the Capeci Declaration, counsel spent over 8,200 hours of attorney and other professional time prosecuting the Litigation for the benefit of the Class. Capeci Decl., ¶156. Counsel's lodestar, derived by multiplying the hours spent on the Litigation by each attorney or other professional by his or her hourly rate in 2024,[5] is $5,284,550.[6] In other words, the requested fee ($15,333,333.33) represents an approximate multiple of 2.90 to Plaintiffs' Counsel's lodestar. That multiplier is well within the range approved in other securities class actions. *See Arconic*, ECF 253 at 1-3 (approving one-third fee, representing multiplier of 3.54); *Schuler*, 2016 WL 3457218, at *10 (approving 33% award with 3.57 multiplier); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 134-35 (D.N.J. 2002)

---

[5]    The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989).

[6]    Courts have noted that it is appropriate to consider further time in the lodestar crosscheck; for example, time that will be needed to administer the settlement. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (noting that "[i]n addition to time spent through final approval, class counsel estimate they will spend [significantly more time] to implement and administer the settlement"), *aff'd in part, rev'd in part*, 999 F. 3d 1247 (11th Cir. 2021). Such additional time will reduce the multiplier.

- 23 -

(approving one-third fee with 4.3 multiplier). Indeed, a 2.9 multiplier is appropriate in "a hard-fought [securities] case with a substantial risk." *In re DaimlerChrysler AG Sec. Litig.*, 2004 WL 7351531, at \*19 (D. Del. Jan. 28, 2004).

### F.    Reasonably Incurred Litigation Expenses Should Be Awarded

Plaintiffs' Counsel also request payment of costs, charges, and expenses incurred by them in connection with the prosecution of this Litigation in the aggregate amount of $970,949.13. Counsel in class actions are entitled to recover expenses that are "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *ViroPharma*, 2016 WL 312108, at \*18 (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Schering-Plough I*, 2012 WL 1964451, at \*8 (approving litigation expenses and noting that "[t]his type of reimbursement has been expressly approved by the Third Circuit").

The expenses borne by Plaintiffs' Counsel are documented in the accompanying firm declarations. These expenses consist of typical categories, such as consultants, bankruptcy counsel, document hosting and production, experts, travel, research costs, mediation fees, filing fees, postage, copying, and delivery. *See* Robbins Geller Fee and Expense Decl., ¶¶5-6; Carella Byrne Fee and Expense Decl., ¶5. These expenses were reasonable and necessary to Plaintiffs' prosecution of the claims and achieving the Settlement and are of the same type routinely approved in securities class actions. *See Nguyen*, 2024 WL 3691614, at \*12-\*13 (approving costs and expenses for filing,

- 24 -

copying, mediation, and case administration); *ViroPharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski*, 2016 WL 6661336, at *23 (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

Further, the requested amount is less than the expense figure of up to $1.5 million set out in the Postcard Notice, Notice, and Summary Notice; to date, there have been no objections to that proposed figure.  For all of these reasons, the requested expense award should be approved.

### G.    Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4)

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*").  The PSLRA expressly permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).  In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives." *Schering-Plough II*, 2013 WL 5505744, at *37.  The reason behind permitting payment for services of a

- 25 -

4916-5963-6511.v1

lead plaintiff was made clear in the congressional record: "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995). Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort in representing the class.

Plaintiffs Canadian Elevator and Sunrise seek awards of $10,000 and $8,250, respectively, for the time they devoted to supervising counsel and participating in the Litigation. *See* Manion Decl., ¶13; Williams Decl., ¶12; Capeci Decl., ¶¶173-174. The declarations describe Plaintiffs' activities directly related to representing the Class, including: (i) consulting with counsel regarding the Litigation and the Court's orders; (ii) reviewing and commenting upon pleadings, motions, and briefs; (iii) reviewing correspondence and status reports from counsel; (iv) responding to discovery requests, collecting documents for production, and providing deposition testimony; (v) conferring with counsel concerning litigation strategy; and (vi) monitoring settlement negotiations. Manion Decl., ¶12; Williams Decl., ¶7.

The requested class representative awards are reasonable and are less than or equal to awards in many similar cases. *See, e.g.*, *EROS*, 2023 WL 8519091, at *2

4916-5963-6511.v1

(awarding $15,000 to each lead plaintiff); *Arconic*, ECF 253 at 4 (awarding total of $65,000 to three lead plaintiffs); *Kanefsky*, 2022 WL 1320827, at *12 (awarding $10,000 to each of the two class representatives); *Healthcare Servs. Grp.*, 2022 WL 118104, at *13 (awarding $12,500 to class representative); *In re CIGNA Corp. Sec. Litig.*, No. 2:02-cv-08088-MMB, ECF 288 at 1-2 (E.D. Pa. July 13, 2007) (approving awards to four lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at *37 (approving awards to four lead plaintiffs totaling more than $102,000); *id.* at *56-*57 (in related matter, approving awards to four separate lead plaintiffs totaling more than $109,000); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (approving award to lead plaintiff of $18,000); *Li v. Aeterna Zentaris Inc.*, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) (approving awards of $17,000 to each of the three lead plaintiffs).  Plaintiffs respectfully request that the proposed awards be approved.

## IV.    CONCLUSION

For all the reasons stated above and in the accompanying declarations, Lead Counsel respectfully requests that the Court: (i) award Plaintiffs' Counsel attorneys' fees of one-third of the Settlement Amount and payment of litigation expenses of $970,949.13, plus the interest earned on both amounts; and (ii) award Plaintiffs a total of $18,250 in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).

- 27 -

DATED:  March 11, 2025

Respectfully submitted,

CARELLA, BYRNE, CECCHI, BRODY
  & AGNELLO, P.C.
JAMES E. CECCHI
KEVIN G. COOPER

*s/ James E. Cecchi*
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Local Counsel for Plaintiffs*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD (*pro hac vice*)
MICHAEL G. CAPECI (*pro hac vice*)
AVITAL O. MALINA (*pro hac vice*)
NATALIE C. BONO (*pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
mcapeci@rgrdlaw.com
amalina@carellabyrne.com
nbono@rgrdlaw.com

- 28 -

4916-5963-6511.v1

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
(*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

*Lead Counsel for Plaintiffs*

LORIUM LAW PLLC
RONALD J. COHEN
RICHELLE B. LEVY
101 NE 3rd Avenue, Suite
1800 Fort Lauderdale, FL 33301
Telephone: 954/462-8000
rcohen@loriumlaw.com
rlevy@loriumlaw.com

*Additional Counsel for Named Plaintiff
Sunrise*

- 29 -

4916-5963-6511.v1